LILLIAN MAGGI *v.* JOHN C. MENDILLO

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

664

Argued October 6—decided November 8, 1960

*Alexander Winnick,* with whom, on the brief, were *Gilbert H. Winnick, Edward B. Winnick* and *Sidney Gimple,* for the appellant (plaintiff).

*Morris Tyler,* with whom, on the brief, was *William L. F. Felstiner,* for the appellee (defendant).

KING, J. In this action the plaintiff sought to recover damages from the defendant, a surgeon, for

alleged negligence in the performance of an operation on her throat, described in the complaint as a bilateral removal of recurrent nodular goiter. From a judgment for the defendant the plaintiff appealed, assigning error in the charge and in a ruling on evidence. An assignment of error in the denial of the plaintiff's motion to set aside the verdict is quite properly not pressed in the brief and does not require discussion. We first consider the ruling on evidence.

The defendant, in 1942, had performed an operation on the plaintiff's throat. The claims of proof of the plaintiff were as follows: She recovered uneventfully from that operation and experienced no further difficulty until 1955. In January, 1955, she found it difficult to breathe or swallow. In March she consulted the defendant, informed him of this condition and told him that she also had a choking sensation. Thereupon the defendant advised her to enter the hospital for the same operation as he had performed in 1942; she did this on March 23; the defendant performed the operation and after about a week the plaintiff was discharged from the hospital. During the succeeding two weeks, she noticed that she had no feeling in the right side of her throat and had very little voice, all of which she reported to the defendant during office calls. He advised her that she would be all right in a few weeks.

The gist of the plaintiff's complaint was that in the course of the 1955 operation the defendant negligently damaged several nerves and her voice box. The defendant agreed that the plaintiff's right vocal cord is permanently paralyzed. He stated that the usual cause of such paralysis is the failure of the right recurrent laryngeal nerve to function properly,

but he denied that any such failure, if it existed in the case of the plaintiff, was due to negligence on his part either in the performance of the operation or otherwise.

On August 23, 1957, nearly a year and a half after the institution of this action, the plaintiff was admitted to Grace-New Haven Community Hospital for an incomplete abortion. This was the same hospital in which the operation of 1955 had been performed. The plaintiff offered in evidence her entire record at that hospital, covering an earlier admission in 1953 and the admissions in 1955 and 1957. Under the heading "Personal History" in the 1957 admission note was a reference to the two operations for difficulty in breathing, swallowing and hoarseness. It was followed by the entry "probable paralysis of the right recurrent laryngeal nerve." Upon the defendant's objection, the quoted language was ordered obliterated by the court and the balance of the hospital record was admitted. The plaintiff excepted to the exclusionary portion of the ruling. The court assigned as its reason for the exclusion the fact that "the plaintiff's condition, which required hospitalization in August, 1957, was quite apart from any condition growing out of the operation performed in March, 1955."

The hospital record, except for the single exclusion, was admitted without objection as a business entry under the provisions of what is now § 52-180 of the General Statutes, the material portion of which is quoted in *D'Amato* v. *Johnston,* 140 Conn. 54, 56 n., 97 A.2d 893. There is no claim that the plaintiff had not proven the statutory prerequisites to the admissibility of the hospital record as pointed out in *Weller* v. *Fish Transport Co.,* 123 Conn. 49, 60, 192 A. 317, and *State* v. *Ferraiuolo,* 145 Conn.

458, 463, 144 A.2d 41. We have consistently, however, made clear that while the statute should be liberally construed, the mere fact that a record is generally admissible under it does not mean that anything and everything contained in the record is necessarily admissible in any given case. *Borucki* v. *MacKenzie Bros. Co.,* 125 Conn. 92, 102, 3 A.2d 224; *D'Amato* v. *Johnston,* supra, 57; see *Orzechowski* v. *Higgins,* 146 Conn. 463, 465, 152 A.2d 510. The rule applicable here is to be found in *D'Amato* v. *Johnston,* supra, 61, a case also concerned with the admissibility of a particular entry in a generally admissible hospital record. "The real business of a hospital is the care and treatment of sick and injured persons. . . . [E]ven though it might be the custom of a hospital to include in its records [entries setting forth a given type of] information . . . , such entries . . . would not be made admissible by the statute unless they also contained information having a bearing on diagnosis [or care] or treatment. . . . [W]here the entry in a hospital record is pertinent to the care or treatment of a patient, it is admissible." The statute provides that an entry shall be admissible "if the trial judge finds that it was made in the regular course of any business." § 52-180. This means that the relevancy of the entry in question to the business of the hospital at the time the entry was made—that is, to the care and treatment of the patient at that admission—determines its admissibility and is a preliminary question of fact for the trial judge. *D'Amato* v. *Johnston,* supra. His decision must stand unless it is one which he could not reasonably have reached.

There is no claim that the plaintiff's throat condition had any bearing on, or connection with, the incomplete abortion. As far as appears, the ex-

cluded entry regarding paralysis of the plaintiff's laryngeal nerve was disconnected from, and therefore irrelevant to, the business of the hospital at the time the entry was made. As far as the plaintiff was concerned, that business was furnishing her with care and treatment for an incomplete abortion. If there was a connection or relevancy, that is, if the entry concerning the plaintiff's throat was a step in the diagnosis, care or treatment of her incomplete abortion, it was the privilege of the plaintiff to offer proper evidence to show it. There is, however, no basis in the finding for any conclusion other than that reached by the court, and the reasonableness of that conclusion cannot be successfully attacked. There was no error in the ruling excluding the entry.

In her request for a finding, the plaintiff described the questions of law which she desired to have reviewed as the ruling on evidence just discussed and whether the court erred "in charging the jury as stated in paragraphs 120 through 193, inclusive, of the Draft Finding." In her assignments of error, she stated that the court erred "[i]n charging the jury as appears in paragraphs 149 through 222, inclusive, of the finding." In each instance the paragraphs enumerated embraced the entire charge. Actually, the plaintiff's brief attacks but three portions of the charge. Two of these each involve a single paragraph of the charge, and the third involves two paragraphs. The failure of the request for a finding, or the draft finding itself, to give any clue as to the portions of the charge complained of forced the court to include in its finding claims of proof covering every conceivable feature of the case which might be needed to test the charge in its entirety. As a result, there was a needlessly long finding, containing matter irrelevant to either the ruling on evi-

dence or the testing of the charge in the three respects actually in question. The court would probably have been justified in refusing to make any finding at all. *Clark's Application,* 79 Conn. 136, 138, 64 A. 12; *Dibble* v. *Wolff,* 135 Conn. 428, 430, 65 A.2d 479; Maltbie, Conn. App. Proc. §§ 128, 129.

Where in a jury case complaint is made of the charge, the request for a finding, under § 398 of the Practice Book, as was the case under a statute (Rev. 1902, § 793) which was in effect when *Clark's Application,* supra, was decided, must separately set forth with reasonable clarity, and with a reference to the appropriate paragraph or paragraphs of the charge, each separate proposition in the charge claimed to have been erroneous. See Practice Book, Form No. 558 (B). The reasons for the rule and the evils which flow from a failure to comply with it are obvious and are clearly explained at length in *Clark's Application,* supra, in the following language: "By [rule] it is made one of the conditions precedent to the right to have a finding at the hands of a trial judge, that the party desiring to appeal prefer a written request therefor, which shall embody a statement of the questions of law which it is desired to have reviewed. . . . This requirement is not an arbitrary one whose only object is to harass counsel desiring to appeal. On the contrary, it has a highly beneficial purpose and is well adapted to serve that purpose if obeyed in its spirit. It seeks to prepare the way for the preparation of counterfindings by parties, and findings by trial judges, with an intelligent understanding of the purposes intended to be served by them, and thus lead to the presentation upon the record of all those facts, and only those facts, which might become pertinent upon the appeal. The advantages to be gained and dangers

avoided by such a course are as apparent as they are important to the fair administration of justice. So important are they that the requirement of the [rule] is one which ought to be enforced not only in its letter but also in its spirit. Otherwise, unnecessary burdens will be imposed upon trial judges who, being compelled to prepare their findings in ignorance of appealing counsel's grievances, will be driven to make every finding comprehensive of all facts which might become pertinent to possible questions of law, or whose omission might create an opportunity for such questions. Otherwise, the records of this court will be unnecessarily encumbered with immaterial matter. Otherwise, the door would be open to surprise and unfair attack. The [rule] has attempted to prevent these results by a simple requirement which can be a hardship upon nobody. It is the plain duty of the courts to give their support to this attempt, by not condoning either a disregard for its mandate, or, what is equally objectionable, a perfunctory regard for it which, by denying its purpose, accomplishes an evasion of it." See Maltbie, op. cit. § 128.

The plaintiff, as already noted, followed a like practice in making the assignments of error. A single assignment indiscriminately, without any stated reason, attacked all paragraphs of the charge. This procedure was contrary to Practice Book § 408, which requires that "[a]ll assignments of error shall be specific . . . ." It was also contrary to Form No. 561 (C) of the Practice Book. *Johnson* v. *Cooke*, 85 Conn. 679, 683, 84 A. 97; *Costello* v. *Costello*, 134 Conn. 536, 543, 59 A.2d 520; see Maltbie, op. cit. §§ 168 and 175 and cases cited therein.

The cumulative effect of these violations of our rules was that the trial court was given no statement

as to what portions of the charge were being attacked or what fault was being found with them. Nor was the defendant, the appellee, given that information until his receipt of the plaintiff's brief. This was no mere inadvertent failure strictly to conform to some technical rule. It was a complete failure to conform to the requirements of §§ 398 and 408 of the Practice Book and to follow Form No. 561 (C). Shortcomings at least approaching those found here have occasionally been overlooked, as was done, for instance, in *Vignone* v. *Pierce & Norton Co.,* 130 Conn. 309, 311, 33 A.2d 427; *Zatkin* v. *Waterbury Wrecking Co.,* 128 Conn. 280, 282, 21 A.2d 924; and *O'Neil* v. *Larkin-Carey Co.,* 106 Conn. 153, 158, 137 A. 721. The present congested state of the trial court docket makes this not generally feasible, especially where, as here, a claim is clearly and vigorously made by the appellee in his brief that the failure of the plaintiff to conform to Practice Book §§ 398 and 408 disentitled the plaintiff to any review in this court on the basis of an assignment of error directed to the entire charge, in gross. We are constrained to sustain this claim of the defendant. Practice Book § 409; Maltbie, op. cit., §§ 128, 129, 168, 175.

There is no error.

In this opinion BALDWIN, C. J., MURPHY and SHEA, Js., concurred; MELLITZ, J., dissented.