STATE OF CONNECTICUT *v.* FRANK TEDESCO

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 18-25116

Argued March 1—decided April 23, 1971

*Joseph J. Gallicchio,* of Torrington, for the appellant (defendant).

*John F. Bianchi,* assistant prosecuting attorney, for the appellee (state).

CASALE, J.   The defendant, having been found guilty of speeding in violation of General Statutes § 14-219 (a) (2), after a trial to the jury, has appealed from the judgment, assigning error in several rulings on evidence.

The evidence offered by the state of the speed of the defendant's motor vehicle was based entirely on the use by the state police of a speed detection instrument popularly called "radar."   Six rulings on evidence relate to the admission into evidence of test records relating to the accuracy of three tuning forks assigned to the radar instrument used by the state police to determine the speed of the defendant's motor vehicle while it was proceeding on route 63 in the town of Canaan on November 26, 1969.  The only question raised on the admission of the test records was whether they were properly received in evidence as business entries under General Statutes § 52-180.

James Reichenberg, one of the two troopers assigned to the state police department radar instrument in question on the day and place mentioned, gave evidence of the training course undergone by him in setting up radar instruments and operating them on the public highways of the state in the enforcement of the speeding laws, and of his five years' experience in operating radar instruments to

measure the speed of motor vehicles. He testified that before setting up the radar unit for use on route 63 on November 26, 1969, he tested the accuracy of the radar instrument with the use of 40-, 60- and 80-mile-per-hour tuning forks, and the instrument was given the same tuning-fork test at the end of the day. When the trooper was asked for the results of the tuning-fork tests, the defendant objected on the ground that the state had not established the accuracy of the tuning forks themselves, and the objection was sustained. After some preliminary questions put to him by the state, Reichenberg testified the tuning forks are tested for accuracy by the Connecticut state police department and that the three tuning forks used in testing the radar unit in this case were tested before and after the defendant's speed was recorded, viz., on October 7, 1969, and on March 31, 1970.

After testimony that the records of the tests of the three tuning forks were made in the regular course of the business of the state police department, and after the records of the two tests on each of the three tuning forks were offered in evidence as business entries, the defendant objected to each record on the ground that the state had not laid a "sufficient foundation" for their admission as business entries. The trial court expressly found that the requirements of § 52-180 had been satisfied; it overruled the objections to the admission of the six records; and the defendant excepted. Each of the test records consists of only one sheet and contains only the results of the tests as to one of the tuning forks, identified by a serial number. On the bottom of each record appear the words "Test performed by:" followed by the signature of Sergeant Nelson Hurlburt.

The test records are hearsay evidence. "The question is whether it was admissible under any exception to the hearsay rule. Section 52-180 makes ad-

missible any writing or record made as a memorandum of any act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business . . . and that it was the regular course of such business to make such writing at the time of the act, transaction, occurrence or event recorded or within a reasonable time thereafter. We have held that compliance with these qualifications is a prerequisite to admissibility." *Orzechowski* v. *Higgins*, 146 Conn. 463, 465, and cases cited; see *State* v. *Masse*, 24 Conn. Sup. 45, 53–56, 1 Conn. Cir. Ct. 381, 389–92. The statute establishes a general rule as to admissibility of evidence in criminal as well as civil cases. *State* v. *Hayes*, 127 Conn. 543, 598. A police report may be admitted as a business entry once the court finds the requirements of § 52-180 have been satisfied. *Mucci* v. *LeMonte*, 157 Conn. 566, 569; *Szela* v. *Johnson Motor Lines, Inc.*, 145 Conn. 714, 723. The trial court's finding that the requirements of § 52-180 had been satisfied must stand, since it was reasonably reached on the record. *Maggi* v. *Mendillo*, 147 Conn. 663, 667.

The defendant contends that before tuning-fork test records can be admissible they must be shown to have been "based on the entrant's own observation or on information of others whose business duty it was to transmit . . . [them] to the entrant." As authority, the defendant cites *Mucci* v. *LeMonte*, supra.

Section 52-180 imposes no such burden on one offering a business record. The statute provides: "Such writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are

unavailable as witnesses. Either of such facts and all other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of such evidence, but not to affect its admissibility." The statute contemplates "that there need be no opportunity afforded to cross-examine those who made the entries if as a matter of fact the entries are admissible as business entries under its provisions." *D'Amato* v. *Johnston,* 140 Conn. 54, 62; see *State* v. *Ferraiuolo,* 145 Conn. 458, 464. Considering a similar statute, the Supreme Court of Ohio said that the purpose of the statute, providing for the admission of a properly identified record of an act, condition or event, is to liberalize and broaden the shopbook rule and to permit admission of records regularly kept in the course of business and incident thereto, to avoid the necessity and expense, inconvenience and sometimes impossibility of calling as witnesses those who collaborated to make the record. *Weis* v. *Weis,* 147 Ohio St. 416, 425.

The trial court was correct in overruling the objections to the admission of the tuning-fork test records as business entries.

We will now consider the remaining assignment of error. During the cross-examination of Reichenberg, the defendant moved the court to exclude all references in the evidence to the term "radar," since the use of the term was prejudicial to him. The motion was denied, and the defendant excepted. On cross-examination, Reichenberg again stated that he had undergone a course of study on the use and operation of the police radar and that he had five years' experience in using the instrument to measure the speed of motor vehicles. He did not profess knowledge of the "internal workings" of the police radar, and he expressed himself as unfamiliar with various technical terms relating to the functioning

of radar in general. He said that the police radar measures only speed and does not determine range or direction. It was at this point that the defendant moved to exclude from the evidence all mention of the term "radar," and he alluded to and quoted from *State* v. *Tomanelli,* 153 Conn. 365, which holds that police radar such as was used in this case is not a true radar device. He spoke of the vast sums expended by the government in the improvement of the true radar in general use by the armed forces for determining the range, direction and speed of a target object. Until the defendant's argument on his motion, no mention had been made during the trial of "true radar" or "military radar." The burden of the defendant's argument on the claim of prejudice was that because of the frequent use during the trial of the term "radar" in referring to the police device the jury might attribute to that device the "great accuracy and flexibility" of the military true radar instrument. In view of the trooper's testimony that the police radar measures only speed and that it does not measure direction and range, it is impossible to understand how the jury could confuse the police instrument with the true radar used by the armed forces. The court was correct in denying the motion.

There is no error.

In this opinion DEARINGTON and DiCENZO, Js., concurred.