## ELSIE LaFAIVE *v.* MARIO DiLORETO ET AL.
### (2428)

DANNEHY, C.P.J., TESTO and HULL, Js.

Argued February 28—decision released May 29, 1984

*Snow Gene Munford,* for the appellants (defendants).

*L. Paul Sullivan,* for the appellee (plaintiff).

TESTO, J. The plaintiff was the tenant in an apartment house owned by the defendants, Mario and Rosa

DiLoreto. On January 11, 1972, in the early morning, while the plaintiff was descending the interior stairway of the building from her third floor apartment, she fell, head first, down from the second to the first floor. She alleged that, as she was descending, her heel caught on the edge of the rubber mat on the third tread down from the second floor landing and that the mat was raised above the tread surface. The plaintiff commenced a negligence action against the defendants claiming that they had failed to secure the back edge of the rubber mat onto the stairway, to properly inspect the stairway, to provide a handrail and to take reasonable steps to cure the defect, the raised mat. The jury returned a verdict in favor of the plaintiff in the amount of $46,000. The defendants then filed a motion to set aside the verdict which was denied by the trial court. The defendants appeal[1] from the judgment denying their motion to set aside the verdict. In their appeal, the defendants claim that the court erred (1) in refusing to set aside the verdict because there was no credible evidence of actual or constructive notice to the defendants of the alleged defect in the rubber mat on the stairs; (2) in refusing to set aside the verdict because the proof did not conform to the pleadings; (3) in admitting the plaintiff's personnel records as business records; (4) in curtailing the defendants' cross-examination of the plaintiff regarding her conversation with her attorney during a recess; and (5) in excusing for cause two prospective jurors who were engineers.

I

Our review of a trial court's refusal to set aside a verdict is limited. If on the evidence the jury could reasonably have decided as it did, we will not find error in the trial court's acceptance of the verdict. *Kalleher*

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

v. *Orr,* 183 Conn. 125, 126, 438 A.2d 843 (1981). Upon review in this court, we must give the evidence the construction most favorable to support the verdict. Id., 126–27. The conclusion of the judge who presided at the trial and denied the defendants' motion to set aside the verdict is significant for he had an opportunity superior to ours to weigh the evidence presented and to determine the credibility and effect to be given the evidence. *Swift & Co.* v. *Rexton, Inc.,* 187 Conn. 540, 543, 447 A.2d 9 (1982); cf. *Rood* v. *Russo,* 161 Conn. 1, 5, 283 A.2d 220 (1971).

Whether the jury's general verdict for the plaintiff was premised on either actual or constructive notice, it is sustainable if either type of notice is supported by the evidence. For the plaintiff to recover for the breach of a duty owed to her as an invitee,[2] she had to allege and prove that the defendants had actual or constructive notice of the presence of the specific unsafe condition which caused her fall. See *Monahan* v. *Montgomery,* 153 Conn. 386, 390, 216 A.2d 824 (1966). Either type of notice must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it. Id.; *White* v. *E & F Construction Co.,* 151 Conn. 110, 113, 193 A.2d 716 (1963). "On a question of notice, the trier's consideration must be confined to the defendant's knowledge and realization of the specific condition causing the injury, and such knowledge and realization cannot be found to exist from a knowledge of the general or overall conditions . . . on the premises." *Monahan* v. *Montgomery,* supra; *Krause* v. *Almor Homes, Inc.,* 149 Conn. 614, 618, 183 A.2d 273 (1962).

The named defendant testified that he saw and percieved the raised condition of the mat prior to the acci-

---

[2] The plaintiff's status as a business invitee was alleged in the complaint and admitted by the defendants in their amended answer.

dent, but that he did not pay any attention to it because he perceived that physical condition as normal. There was also evidence presented by a qualified expert in the field of safety engineering, who examined the stairway four weeks after the accident.[3] He testified that the waving or elevated condition of the mat would have occurred during the warm weather, and would have come to an end and remained stable throughout the colder weather months so that a person inspecting[4] the stairs would have seen the raised condition of the mat for a period of at least two months before the accident occurred. This was a reasonable length of time in which the defendants in the exercise of due care should have discovered the defective condition in time to have it remedied. See *Long* v. *Savin Rock Amusement Co.*, 141 Conn. 150, 153, 104 A.2d 221 (1954). Under these circumstances, there was ample evidence from which the jury could reasonably have concluded that the claimed specific defect had existed for such a sufficient length of time that the defendants should have known of it or should have discovered it in the exercise of a reasonable supervision of the premises. We, therefore, cannot say that the trial court abused its discretion in refusing to set aside the verdict.

## II

To set aside a verdict on the basis of a variance between the pleadings and the proof, the variance must be material in a way which is essential to the cause of action claimed. *Schaller* v. *Roadside Inn, Inc.*, 154 Conn. 61, 65, 221 A.2d 263 (1966); *Francis* v. *Hollauer*, 1 Conn. App. 693, 695, 475 A.2d 326 (1984); *S.H.V.C.*,

---

[3] The plaintiff testified that there was no change in the condition of the stairs or the rubber mat between the time she examined the mat on the day of the fall and the day that the expert witness examined it, February 10, 1972.

[4] The named defendant testified that he went up the stairs approximately once every two weeks.

*Inc.* v. *Roy,* 37 Conn. Sup. 579, 580–81, 428 A.2d 806 (1981). Not every variance, however, is material. If the variance is immaterial, it is disregarded. Practice Book § 178. An immaterial variance is one in which the difference between the allegations and the proof is so slight and unimportant that the adverse party is not misled as to the charge he is required to meet or prejudiced in maintaining his defense on the merits of the case. *Strimiska* v. *Yates,* 158 Conn. 179, 184, 257 A.2d 814 (1969). Thus, an otherwise valid judgment will not be invalidated if a variance does not change the theory of the cause of action and if the party complaining of the variance was, at all times, in a position to know the true state of the facts. Id.

The allegations in the complaint state that "when [the plaintiff] arrived at the third tread down from the second floor landing she was caused to trip and fall down the stairway by reason of a . . . defective condition of the stairway at said location . . . ." The defendants posit that at trial evidence was presented that the plaintiff's left heel became caught on the rubber mat and that the accident was not the result of her tripping on the mat. Any variance between the mechanics of the fall as presented during the trial and the definition of the word "trip" is a difference in semantics and does not change the theory of the cause of actions. We must, therefore, conclude that the variance is immaterial and will not invalidate the judgment.

### III

Three statutory criteria for the admission of business records are set forth in General Statutes § 52-180. They are (1) that the record was made in the regular course of business; (2) that it was the regular course of the business to make the writing; and (3) that the writing was made at the time of the transaction or occurrence or within a reasonable time thereafter. General Stat-

utes § 52-180; *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 383–84, 461 A.2d 422 (1983). Once these criteria have been met by the party seeking to introduce the record, however, it does not necessarily follow that the record itself is generally admissible, nor does it mean that everything in it is required to be admitted into evidence. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* supra, 384; *Hutchinson* v. *Plante,* 175 Conn. 1, 4, 392 A.2d 488 (1978); *Mucci* v. *LeMonte,* 157 Conn. 566, 569, 254 A.2d 879 (1969); *Maggi* v. *Mendillo,* 147 Conn. 663, 667, 165 A.2d 603 (1960). Additionally, the information contained in the record must be relevant to the issues being tried; see *Maggi* v. *Mendillo,* supra; and the information contained in the report must be based on the entrant's own observation or on information of others whose business duty it was to transmit it to the entrant. *Mucci* v. *LeMonte,* supra.

The plaintiff's personnel records were introduced through the president of the company where she was employed. The defendants claim that the trial court erred in admitting these records into evidence as full exhibits over their objections. The specific grounds were that the "business entry qualifications haven't been met with." On appeal the defendants' objections to their admissibility are twofold: (1) as to all three exhibits, they claim that there was no evidence that these were made by or entered as a result of the witnesses' own personal knowledge or on the personal knowledge of the entrant or upon information of others with personal knowledge of the same, who are or were under a business duty to transmit such information to the entrants; and (2) as to two of the exhibits, the defendants claim there was no evidence or testimony presented that the information was recorded at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

The trial court is given the discretion under the statute to determine whether the criteria of the statute have been satisfied. In reviewing the decision of the trial court, we must construe the statute liberally. *Shuchman* v. *State Employees Retirement Commission,* 1 Conn. App. 454, 458–59, 472 A.2d 1290 (1984). The problem with the defendants' first claim, that the job evaluation reports were not based on the personal observation of the witness, is that they failed to raise this specific objection in the trial court. We will not review a claim, except in exceptional circumstances where the claim raised on appeal is different from the objection raised in the trial court. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* supra, 388. There are no exceptional circumstances here. The defendants' second objection, however, goes to the statutory criteria of § 52-180 and is similar enough to the objection raised at the trial level to merit our review of it. See *Shuchman* v. *State Employees Retirement Commission,* supra, 457–58 n.6. The evidence presented was that the exhibits were prepared contemporaneously with the events recorded therein. On the basis of such evidence, we must reject the defendants claim.

## IV

The defendants' next claim of error concerns certain conversations the plaintiff had with her attorney during a recess while she was still testifying. During cross-examination, the plaintiff had testified to the location of her heel when her left foot became caught on the mat and that when her right heel let go, it had been against the back of the stair riser. After a recess, upon redirect examination, the plaintiff's counsel asked her "[d]o you recall exactly what the position of the toe of your foot was when it came onto that step?" The plaintiff replied, "my feet land on the stairs when I walk down the stairs." Her counsel asked a further ques-

tion, "[c]an you tell us precisely where, exactly where, your heel was in reference to the back part of the step which is called the riser?" To which she responded, "[n]o." On recross-examination the defendants' counsel noted first that her testimony before the recess as to the location of her heel differed from her testimony after the recess. The defendants' counsel proceeded to inquire whether she had spoken to anyone during the recess. Upon learning that the plaintiff had spoken with her attorney, he asked, "[w]ell what did you talk about?" She replied, "I recall he was talking about the stairs and the mat." The defendants' counsel continued, "[w]as he telling you to correct or change your answer?" she replied, "[n]o." The plaintiff's counsel objected to this line of questioning and the court ruled that the subject matter of the conversation between the plaintiff and her attorney was a privileged communication.

"The common law rule of privileged communications has been stated as follows: 'Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived.' 8 Wigmore, Evidence § 2292, p. 554 (McNaughton Rev. 1961)." *Rienzo* v. *Santangelo,* 160 Conn. 391, 395, 279 A.2d 565 (1971). One of the essential elements of the claim of privilege between attorney and client is that the communication be confidential. *Rienzo* v. *Santangelo,* supra; *State* v. *Hanna,* 150 Conn. 457, 466, 191 A.2d 124 (1963). The purpose and effect of the line of questioning by the defendants' counsel during the recross-examination was to have a direct communication between the plaintiff and her counsel revealed. The resort to these questions went beyond the scope of proper recross and was an invasion of the

attorney client privilege. The trial court properly prevented the defendants' counsel from pursuing this line of questioning.

## V

The right of a presiding judge to excuse a prospective juror is controlled by General Statutes § 51-240 (b) which states: "If the judge before whom the examination is held is of the opinion from the examination that any juror would be unable to render a fair and impartial verdict, the juror shall be excused by the judge from any further service upon the panel . . . as the judge determines." The trial court is vested with wide discretion in conducting an examination of prospective jurors. *Childs* v. *Blesso,* 158 Conn. 389, 394, 260 A.2d 582 (1969); see also *State* v. *Roberson,* 173 Conn. 102, 103–104, 376 A.2d 1087 (1977). There is no reversible error in its exercise of that discretion unless it has been clearly abused or one of the parties has been prejudiced by it. Id.

The two jurors who were called and subsequently excused by the judge were both civil engineers who stated[5] that it would be difficult for them to separate

---

[5] As pertains to the first juror the following questioning took place:

"Q: Yes. We are going to have in this case the testimony of civil engineers. And as may often times be the case, there may be differences of opinion, differences of conclusion by these civil engineers. And you may, in fact, have your own opinion of a particular set of circumstances having viewed the evidence. Do you feel that your own judgment as a civil engineer would enter into your judgment of the engineering questions that would have to be decided in this case?

"A: Yes.

\* \* \*

"Q: And, also, posing a hypothetical, if you did run into a situation where all of the engineering testimony agreed on a particular conclusion or a particular fact, and you as an engineer on the basis of your engineering ability and knowledge disagreed with those things that the other engineers seem to be in agreement with, would you have difficulty with that particular situation?

\* \* \*

"Q: You would have difficulty?

their own extrinsic knowledge from those issues which pertained to their particular area of expertise. Under

"A: I would have difficulty, yes.

"Q: And be serious difficulty as far as your own conscience is concerned?

"A: I don't know if it would be a serious problem; but I have my own opinions on engineer approach and on facts, and I would—if I was in disagreement with them, I would find it difficult to—to judge the case solely on—on their evidence.

"Q: You feel under those circumstances that you would be more comfortable not sitting on this particular case?

"A: Yes.

\* \* \*

"The Court: . . . [I]t is very clear to me that this gentleman has—has indicated—has indicated an intention that if—even if the engineering opinions are contrary to his notion of what the engineering situation is that he would substitute his own judgment. And in that regard he is as biased and as prejudiced as if he had some objection to the color of one of the party's eyes. As far as I see it, he has completely lost his—his objectivity, and indicated a prejudice that as a matter of law requires that he be excused from the Jury. So, I grant the motion to excuse him for cause."

As to the second juror the following questions took place: "Q: Okay. Now, in the case that we are about to try, which is a claim of a fall down a stairs, there will be engineers testifying. And my question is this. That we may encounter a situation where the engineers are at issue or differ as to either factual or theoretical opinions concerning a particular point of the case. Do you feel that with your background as an engineer that that would have an influence upon your judgment in trying to evaluate the testimony of the engineers?

"A: If there were disagreement between the two engineers?

"Q: Yes, sir. Yes.

"A: Yes, I would.

"Q: All right. And if, in fact, you encountered a situation wherein both the engineers did agree, but you in your background and experience as an engineer felt that they were both inaccurate, then would that affect your judgment?

\* \* \*

"A: Yes, it would.

"Q: Okay. I don't think I have any further questions.

"The Court: How would it affect your judgment?

"[The Juror]: Well, if—if, in fact, I disagreed with their engineering conclusion, I would—I would think that they weren't proficient in whatever they were doing. Making their judgment. In other words, if it was just a basic engineering concept that was very simple or they misinterpreted or whatever, then I would disagree with their finding.

"The Court: And you would act on your disagreement rather than on what they said?

these circumstances, the trial court did not abuse its discretion in excusing them.[6]

There is no error.

In this opinion the other judges concurred.

"[The Juror]: Yes, I would.
"The Court: Is that what you're saying?
"[The Juror]: Yes.

\*　　　\*　　　\*

"The Court: . . . I think this Juror should be excused for cause. So ruled."

[6] The defendants' have made no claim of having been prejudiced by the trial court's exercise of its discretion.