[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff O. Paul Shew appeals the decision of the defendant freedom of information commission ordering the plaintiff to provide access to certain documents to defendant Edward A. Peruta. The commission acted pursuant to the provisions of the Freedom of Information Act, General Statutes § 1-7 et seq. The plaintiff appeals pursuant to General Statutes § 4-183. The court finds in favor of the plaintiff.
Certain facts essential to the court s decision are not in dispute and are fully reflected in the record. The plaintiff is the town manager of the town of Rocky Hill, CT Page 11112 and he is a party in this case solely in his official capacity. From December 1991 to June 1992, the plaintiff conducted an investigation of the Rocky Hill police chief to determine whether the chief's employment with the town should be terminated. In connection with that investigation, the plaintiff hired Attorney Felix Springer and Attorney Elaine Stuhlman to conduct different aspects of the investigation. Attorney Springer was a partner in the firm of Day, Berry Howard, and Attorney Stuhlman was a partner in the firm of Roggi 
Stuhlman. Her partner, Attorney Curtis H. Roggi, was the town attorney for Rocky Hill.
As found by the commission in its final decision, Attorney Springer concentrated his efforts in reviewing the trial transcript and evidence in a civil tort case,Schnabel v. Tyler, between the police chief and one of the Rocky Hill police officers. In that case, the jury had rendered a verdict against the chief and in favor of the officer on the officer's counterclaims.
Attorney Stuhlman concentrated her efforts in interviewing and obtaining affidavits from Rocky Hill town employees and residents concerning certain activities of the police chief and incidents involving him. Stuhlman composed summaries of the interviews and forwarded them along with the affidavits to Springer in April 1992. She did not forward these materials to the plaintiff.[1]
In June 1992, Attorney Springer completed and forwarded to the plaintiff his "Report to Town Manager O. Paul Shew on the Trial Record of the Counterclaims inSchnabel v. Tyler."
In December 1993, defendant Peruta requested of the plaintiff "access to all statements created and/or collected as part of the investigation that resulted in the termination of former Police Chief Phil Schnabel." In responding to this request, the plaintiff refused to grant Peruta access to the Stuhlman papers; that is her summaries of the interviews and the affidavits that she had obtained. Peruta thereupon filed a complaint with the commission appealing the plaintiff's denial of access to those records. CT Page 11113
The commission conducted a hearing on Peruta's complaint at which the plaintiff and Peruta appeared. The commission also accepted other evidence. Most significantly, the plaintiff provided the commission with copies of the Stuhlman records for its review of them incamera, and the commission did so review them prior to rendering its final decision on Peruta's complaint.
Following the hearing and its in camera review of the documents in question, the commission rendered its final decision. The commission found that the documents are public records. It held that they are not exempt from disclosure under General Statutes §§ 1-19(b)(1) and1-19(c)(1) as "preliminary drafts or notes," and it held that the documents are not protected by the attorney-client privilege pursuant to § 1-19(b) (10). Accordingly, the commission ordered that the plaintiff make the documents available to Peruta in accordance with § 1-19(a).
The basis of the commission's decision regarding the "preliminary drafts or notes" exemption was its interpretation of the statutory language to mean only documents that are used in the creation of some subsequent finished document. It held that the Stuhlman documents were essentially end products themselves, not "preliminary" to anything developed from them, and therefore not exempt as such. The basis of the decision rejecting the claimed attorney-client privilege was the commission's factual finding that Stuhlman was neither hired nor acting as an attorney for the plaintiff but rather as "an investigator with legal credentials."
In his brief to this court, the plaintiff attacks both of the rulings summarized above and states as the bases of his appeal: (1) that the Stuhlman documents are exempt under General Statutes §§ 1-19 (b)(1) and1-19 (c)(1) as preliminary drafts or notes; and (2) that the documents are exempt under § 1-19 (b)(10) as privileged attorney-client communications.
The court has reviewed the entire record of the administrative proceedings in this case, including especially the Stuhlman documents, which were submitted to the court under seal by agreement of the parties. CT Page 11114
With respect to the plaintiff's claims of attorney-client privilege, § 1-19 (b)(10) provides that disclosure is not required of "communications privileged by the attorney-client relationship. " Both parties cite LaFaivev. DiLoreto, 2 Conn. App. 58, cert. denied, 194 Conn. 801
(1984), in support of their respective arguments. In that case, the Appellate Court stated the privilege in its oft cited format as follows:
 Where legal advice of any sort is sought from a professional adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser. . . .
Id., 65, citing 8 Wigmore, Evidence § 2292.
Indisputably, the privilege also extends to communications "relating to that purpose" from the attorney to the client. 8 Wigmore, Evidence § 2320.
The threshold issue is whether the plaintiff sought legal advice "of any sort" from Stuhlman in her capacity as an attorney. As noted, the commission found as a fact that "Stuhlman was not acting in the capacity of legal advisor when she created the Stuhlman records."
In most cases, an administrative agency's factual findings are protected from judicial second-guessing by the most elementary rules of administrative law. "If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld." Conn. BuildingWrecking Co. v. Carrothers, 218 Conn. 580, 601 (1991). "An administrative finding is supported by `substantial evidence' if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred . . . Such a standard of review allows less room for judicial scrutiny than does the `weight of the evidence' rule or the `clearly erroneous' rule . . . In determining whether an administrative finding is supported by `substantial evidence,' a court must defer to CT Page 11115 the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part (Citations and internal quotation marks omitted).Briggs v. State Employees Retirement Commission,210 Conn. 214, 217 (1989).
The corollary to the rule that any substantial evidence will support an administrative finding of fact is that there must indeed be in the record some such evidence if the finding is to be affirmed. "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." (Emphasis added.) General Statutes § 4-183 (j).
In its brief to the court on the issue of the relationship between the plaintiff and Attorney Stuhlman, the commission relies entirely on the testimony of the plaintiff on the subject. The testimony was elicited in both direct and cross examination. In it, the plaintiff repeatedly states that he believed that he needed legal assistance in the investigation of the police chief, that he knew Stuhlman to be a competent attorney, and that he would not have used her for the task assigned if she had not been an attorney.
The testimony relied upon by the commission was given at the April 20, 1994 hearing. In response to questions from the presiding commissioner as to why he chose Stuhlman, the plaintiff stated, "Elaine Stuhlman was at the time also one of the town attorneys in Mr. Roggi's firm . . . Elaine Stuhlman is a very competent attorney, a person I'm familiar with, and was a person that in interviewing I think town employees, since they were familiar with her to some extent, would do both a competent job and someone that people would be comfortable with." In response to a question from the commission attorney, the plaintiff described Stuhlman's status as "I wouldn't say necessarily as Town Attorney; it was something that I had asked Mr. Springer to act as special counsel to the Town and we discussed the use of Ms. Stuhlman and essentially it was something that I CT Page 11116 would urge Ms. Stuhlman to go forward with this under the direction of Mr. Springer." The following colloquy then ensued:
 Commissioner Fitch: If Ms. Stuhlman had not been an attorney, would she still have been able to do the function that she was hired to do, in your opinion?
 Plaintiff Shew: I think not.
 Commissioner Fitch: And what made her being an attorney make her unique in being able to do the function that you hired her to do?
 Plaintiff Shew: Well, in my estimation I would have to have her legal counsel together with Mr. Springer's as to what if any things that they might find.
The foregoing testimony is recorded in pages 7 to 9 of the transcript of the April 20, 1994 hearing. The commission cites those pages specifically in its brief on appeal.
Later in the hearing, the commissioner returned to the subject:
 Commissioner Fitch: What I need to find out is would you, for a complaint against the chief of police, need an attorney?
 Plaintiff Shew: Absolutely. Unequivocally. Absolutely, yes.
 Commissioner Fitch: And under any conditions you could not just hire someone to investigate a complaint against the chief of police?
 Plaintiff Shew: Not in the State of Connecticut.
 Commissioner Fitch: You would need an attorney, and this is your opinion that you would only hire an attorney to investigate. And the purpose of that would be? CT Page 11117
 Plaintiff Shew: The purpose — there is no assumption as to guilt or no guilt going into the complaint, but the law in Connecticut is such, in the (General Statutes § 7-278) provisions, that you have to contemplate that at any time you have a formal complaint made with the chief of police in the state of Connecticut.
Still later in the hearing, the presiding commissioner pursued the thought that the plaintiff wanted an attorney for the job at hand only because that would secure the privilege of confidentially:
 Commissioner Fitch: Well, I'm going to ask it again because I think we've come down to the crux of what we're all here about today. Did you hire Ms. Stuhlman because she was an attorney and you would be afforded attorney-client privilege over her investigation?
 Plaintiff Shew: She could analyze the condition and give me sound legal advice together with what she had discovered, and those two things have to work together.
 Commissioner Fitch: They have to work together because of the format of police chief protection under the law?
 Plaintiff Shew: You have some very strong statutes in the state of Connecticut . . . if you're going to review a complaint against your chief of police of this nature, you have to have legal counsel do that, in my estimation, it's absolutely essential. And you have to have legal advice.
The foregoing testimony appears in pages 52 to 55 of the transcript of the April 20, 1994 hearing. There is no other testimony in those pages that is inconsistent in the slightest with that quoted above, yet the commission cites those pages to support its finding that the plaintiff was not seeking legal advice from Stuhlman when the town retained her to assist in the investigation of the police chief.
The commission's findings (and its arguments in CT Page 11118 support of it) with respect to the purposes for which Stuhlman was retained by the town betray some misunderstanding of the attorney-client privilege as stated in LaFaive v. DiLoreto, supra, 2 Conn. App. 65. In its brief, the commission argues that there is no evidence that Stuhlman ever rendered any legal advice during the course of her employment. But even if she never communicated specific legal opinions regarding the results of her investigation, that fact would not change the nature of the attorney-client relationship nor would it strip the privilege of confidentiality from her communications relating to that relationship. It is not the rendering of legal advice that establishes the attorney-client relationship. If that were the case, the initial communications between the client and attorney, those that are often the most sensitive and most in need of confidentiality, would be unprotected. Rather, it is the client's seeking of legal advice — "of any kind" — that establishes the relationship between client and attorney. Thereafter, communications between them — "relating to that purpose" — are privileged. Id., 2 Conn. App. 65.
In the present case, all of the relevant evidence in the record, including most particularly the testimony of the plaintiff cited by the commission itself, establishes clearly that the plaintiff was seeking legal advice when he retained Stuhlman to conduct the investigation for the town. The fact that Stuhlman's duties included interviewing witnesses did not change the essential attorney-client relationship between the plaintiff, acting for the town, and the attorney. The commission's finding that the attorney-client relationship did not exist has no support in the record and may not be affirmed.
The commission also contends, however, that the attorney-client privilege should not prevent disclosure of the Stuhlman documents because they are not the kind of communication that the privilege protects. In this regard, the commission asserts that the documents do not contain legal advice and they are communications from third parties to the attorney, which fall outside the area of privilege.
As noted, the court has examined the Stuhlman CT Page 11119 documents. They include a report by Stuhlman summarizing her investigation of various incidents involving the chief of police. Also included are summaries of interviews of town officials and employees, and affidavits of some of those persons who were interviewed. Stuhlman's report is divided into several sections. Sections I and II are entitled respectively "Introduction" and "Overview." They set forth in general terms the purpose of the attorney's investigation of the conduct of the police chief the procedure followed by the attorney in conducting interviews, and some preliminary thoughts concerning the facts related during the interviews. Sections 1, 2, 3, and 4 are summaries of four different incidents involving the chief and others. Section 5 is entitled "Conclusion," and it is entirely blank.
Turning again to the definition of the privilege as stated in LaFaive v. DiLoreto, supra, 2 Conn. App. 65, the court concludes that Stuhlman's report is a communication that is protected by the attorney-client privilege. Although it is not a finished, formal legal opinion concerning actions that the plaintiff should or should not take regarding the tenure of the police chief, it is clearly a communication from attorney to client "relating to that purpose." As such, it falls within the area of protection. See Rubin v. State, 602 A.2d 677,683 (Md. 1992).
The summaries of the interviews and the affidavits of the interviewees that Stuhlman obtained in the course of her investigation pose a different question. Some of the summaries of interviews and affidavits relate to the subjects contained in the report; other summaries and affidavits relate to subjects omitted from the report. All relate to activities of the police chief that call into question his fitness for the job. With one exception, all of the subjects of the interviews were current or former town officials or employees. The plaintiff himself was not interviewed, so none of the communications in the Stuhlman documents are from him.
The general rule is that the attorney-client privilege does not extend to knowledge or information obtained by the attorney from third persons, even if the CT Page 11120 I attorney obtained it for the benefit of the client in the course of representing the client. 8 Wigmore, Evidence §2317. Courts have recognized, however, that such a rule must take into account a wide variety of factual situations, especially in cases where the client is not an individual person but is some other entity.
In Upjohn Co. v. United States, 449 U.S. 383 (1980), the client was a business corporation. The information sought to be protected consisted of statements made to the corporate client's attorneys by employees of the corporation who were not part of the higher, "control group" of management. The statements related to possible violations of federal laws by the corporation that the attorneys were investigating in behalf of the corporation. The court held that the privilege applies in such cases because of the special relationship existing between a corporation and its employees. In effect, the court held, communications from the employees to the attorneys constituted communications from the client. The court specifically rejected the more restrictive "control group" test, which provides that the attorney-client privilege in such cases applies only to communications between the attorney and those corporate officials who control the corporation's actions. See City ofPhiladelphia v. Westinghouse Electric Corp. 210 F. Sup. 483
(E.D. of Pa. 1962). In Upjohn, the United States Supreme Court observed that the control group test may be too restrictive because it "frustrates the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation." Upjohn Co. v. U.S.," supra, 392.
The Connecticut appellate courts have not determined the scope of the attorney-client privilege in cases involving employees of corporations or public agencies. However, in Carrier Corp. v. The Home Insurance Company,
Superior Court, JD of Hartford/New Britain at Hartford, DN. 3523836 Conn. L. Rptr. 478 (June 12, 1992) (Schaller, J.), the Superior Court adopted a modified version of the Upjohn approach.
In determining the scope of the attorney-client privilege under the freedom of information statutes when disclosure is sought of communications made by employees CT Page 11121 of a public agency to the agency's attorney, the court must consider different aspects of the public interest. There is, on the one hand, an "`overarching policy' underlying the Freedom of Information Act (FOIA) favoring the disclosure of public records . . . Our construction of the FOIA must be guided by the policy favoring disclosure, and exceptions to disclosure must be narrowly construed." (Citations and internal quotation marks omitted). Superintendent of Police v. Freedom ofInformation Commission, 222 Conn. 621, 626 (1992). But this policy must be balanced by the equally strong public interest in effective lawyer-client communication. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promotebroader public interests in the observance of law andadministration of justice. The privilege recognizes thatsound legal advice or advocacy serves public ends andthat such advice or advocacy depends upon the lawyer'sbeing fully informed by the client." (Citations omitted; emphasis added.) Upjohn Co. v. U.S., supra, 449 U.S. 389.
Given the important public interests that are served by the attorney-client privilege and noting that the privilege is specifically included as an exemption from the requirement of disclosure in the Freedom of Information Act, this court considers the general approach followed in the Upjohn and Carrier cases to be suitable here. To reiterate the conditions under which communications to an attorney for a public agency are protected from disclosure by the privilege, they are: (1) the attorney must be acting in a professional capacity for the agency; (2) the communications must be made to the attorney by current employees or officials of the agency; (3) the communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence.
In the present case, the commission held that the privilege did not apply to the communications in question because it found that Attorney Stuhlman was not acting in the capacity of an attorney when she interviewed the employees. The court has determined that that finding was erroneous in view of all the evidence in the record. CT Page 11122 However, as a result of that erroneous finding, the commission did not make further findings concerning the other elements of the privilege as summarized above; that is, which of the interviewees were current employees or officials of Rocky Hill and whether the interviews were conducted in confidence. Indeed, the court's review of the record indicates that additional evidence may be needed to permit the commission to make such further findings. Accordingly, the case must be remanded for that purpose.
The plaintiff's second contention is that all of the Stuhlman documents are also exempt under the provisions of General Statutes §§ 1-19 (b)(1) and 1-19 (c)(1). It is necessary for the court to decide this claim because it will, if sustained, affect the treatment of any of the Stuhlman documents that are not ultimately protected by the attorney-client privilege.
General Statutes § 1-19 (b)(1) exempts from disclosure "preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure." Section 1-19 (c)(1) adds the caveat that notwithstanding § 1-19 (b)(1), "disclosure shall be required of (1) interagency or intra-agency memoranda or letters, advisory opinions, recommendations or any report comprising part of the process by which governmental decisions and policies are formulated, except disclosure shall not be required of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among the members of such agency."
The Supreme Court considered the meaning of the phrase "preliminary drafts and notes," in Van Norstrandv. Freedom of Information Commission, 211 Conn. 339, 344
(1989). In that case, the records in question consisted of a 1985 survey of the members of the Connecticut Bar Association evaluating judges of the Superior Court. The survey was conducted by the presiding officer of the state House of Representatives in his official capacity. Although the purpose of the survey was to obtain information concerning only those judges who were CT Page 11123 scheduled for reappointment by the legislature in 1986, the survey in its original form contained information about all of the judges. Prior to presenting the survey results to the legislature, information pertaining to judges who were not scheduled for reappointment was excised. The issue before the Supreme Court was whether the original survey, containing the unexcised information, was subject to the exemption provided by §§1-19 (b)(1) and 1-19 (c)(1). The court found that the excised information was not relevant to the report of the survey as it was ultimately delivered to the legislature. That being so, the court held that the information was exempt under § 1-19 (b)(1), stating that "It is records of this preliminary, deliberative and predecisional process that we conclude the exemption was meant to encompass." The court held, further, that even if the information was not exempt under subsection (b)(1), it was exempt under subsection (c)(1) in that it was clearly a preliminary draft of a memorandum that was "subject to revision prior to submission to or discussion among members of (an) agency." The court noted that the deletion of the names of judges who were not due for reappointment in 1986 constituted just such a revision. Van Norstrand v.F.O.I.C., supra, 211 Conn. 348.
As interpreted by the Supreme court in VanNorstrand, §§ 1-19 (b)(1) and 1-19 (c)(1) provide that a document may be exempt as a preliminary draft even if it appears to be a finished product. A significant factor to be considered, in such a case, is the purpose and intended use of the document. Further, if the document is the special kind of preliminary draft that would be disclosable under subsection (c)(1), that subsection nevertheless provides a special, independent exemption for such a document if it is subject to revision prior to submission to the agency.
In its final decision, the commission found that the Stuhlman documents are not preliminary drafts or notes because they were not intended to be used nor were they used in the creation of the report prepared by Attorney Springer, the only completed product that was ever delivered to the plaintiff in connection with the investigation of the police chief. Therefore, the commission concluded, they were not "`antecedent or CT Page 11124 preparatory' to any other document."
The commission's decision fails to distinguish among the documents, but rather lumps them together in categorizing them as non-preliminary. This oversimplification leads to a flawed analysis. Stuhlman's report, labeled Document A in the Index to the in camera
documents, with its "Conclusion" section still blank, can be nothing but a "preliminary draft or note" under any definition of those terms. Moreover, in its unfinished state, it was patently "subject to revision prior to submission to or discussion" with the plaintiff (i.e. by completing the "Conclusion" section, at least).
The other Stuhlman documents, labeled B, C, D, and E in the Index, although not unfinished like the report, fall squarely within the concept of the exemption as outlined in Van Norstrand. That is, their evident purpose was to serve as supporting documentation for the report. Some of them were relevant to the subject matter of the report in its present, albeit unfinished, state; some of them would be irrelevant if the finished report retained its present form, but might, on the other hand achieve relevance depending on how the report might be revised. Those that proved to be ultimately irrelevant would be comparable to the excised information in Van Norstrand;
that is, preliminary notes exempt from disclosure. Even those that are now relevant to the report, however, must nevertheless be considered to be "preliminary" because the report itself is still in an unfinished, pre-revision state.
For all of the reasons set forth above, the court concludes that the Stuhlman documents are preliminary drafts or notes within the meaning of General Statutes § 1-19.
The court's finding that the documents in question are preliminary drafts or notes subject to exemption from disclosure does not conclude the proceedings on that issue. The documents are not exempt under § 1-19 (b)(1), unless the plaintiff determined that the public interest in withholding them outweighed the public interest in disclosure. "Although the statute places the responsibility for making that determination on the CT Page 11125 public agency involved, the statute's language strongly suggests that the agency may not abuse its discretion in making the decision to withhold disclosure. The agency must, therefore, indicate the reasons for its determination to withhold disclosure and those reasons must not be frivolous or patently unfounded." VanNorstrand v. Freedom of Information Commission, supra211 Conn. 345, citing Wilson v. Freedom of InformationCommission, 181 Conn. 324, 339 (1980).
The commission's final decision in this case does not address the issue of the plaintiff's assessment, if any, of the relative weight of the public interest factors involved in his decision to refuse disclosure of the documents. Accordingly, the case must be remanded to the commission for further proceedings to enable it to augment its findings and conclusions in this regard.
The plaintiff's appeal is sustained, and the case is remanded to the commission for further proceedings. The court finds that the issues presented by this appeal are sufficiently novel as to permit the commission's acceptance of additional evidence pursuant to General Statutes § 4-183 (h).
The commission is ordered, pursuant to General Statutes § 4-183 (k), to take the following actions:
1) Take such additional evidence as the parties may present concerning which individuals interviewed by Attorney Stuhlman were employees or officials of the town of Rocky Hill at the time of the interviews. Such evidence may be presented to the commission in camera.
2) Take such additional evidence as the parties may present concerning whether the Stuhlman interviews were conducted individually in confidence.
3) Take such additional evidence as the parties may present concerning whether the plaintiff determined that the public interest in withholding the Stuhlman documents from disclosure outweighed the public interest in disclosure.
4) Render a new decision on the Peruta complaint in light of the additional evidence and consistent with this CT Page 11126 opinion of the court.