RIVER DOCK AND PILE, INC. *v.* O AND G INDUSTRIES, INC., ET AL.
(14222)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and F. X. HENNESSY, Js.

Argued March 19—decision released July 30, 1991

*Robert L. Trowbridge,* for the appellant (named defendant).

*Charles A. Sherwood,* for the appellee (plaintiff).

CALLAHAN, J. The principal issue in this appeal is whether certain documents offered into evidence by the plaintiff were admissible under the business records exception to the hearsay rule, as set forth in General Statutes § 52-180.[1] The trial court concluded that the

[1] "[General Statutes] Sec. 52-180. ADMISSIBILITY OF BUSINESS ENTRIES AND PHOTOGRAPHIC COPIES. (a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility.

"(c) Except as provided in chapter 3, if any person in the regular course of business has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of them

requirements of § 52-180 had been satisfied and admitted the documents. The named defendant seeks a new trial on the ground that the documents in question should not have been admitted.

The facts relevant to this appeal are largely undisputed. The named defendant, O and G Industries, Inc., was the general contractor for the renovation of Union Station in New Haven, which is owned by the New Haven Parking Authority (NHPA). On August 25, 1983, the named defendant entered into a subcontract with the plaintiff, River Dock and Pile, Inc., in which the plaintiff agreed to provide all the labor, material and equipment necessary to design and install piling and a sheeting system required for the construction of platforms A and D and a passenger tunnel leading from the railroad station to the platforms.[2] The contract provided that the plaintiff would receive $476,000 for performing this work. On April 15, 1985, the roof of one of the platforms and some of the catenary wires that provide electricity for the trains were damaged as a result of an accident involving the plaintiff's crane, which was being used for pile driving. The parties dispute whether, at this point, the named defendant

---

to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is otherwise required by statute. The reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding, whether the orginal is in existence or not, and an enlargement or facsimile of the reproduction shall be likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement or facsimile shall not preclude admission of the original.

"(d) The term 'business' shall include business, profession, occupation and calling of every kind."

[2] In addition, the parties subsequently agreed that the plaintiff would perform certain extra work at the site.

wrongfully terminated the contract or whether the plaintiff simply refused to perform any more work under the contract. The named defendant subsequently hired another subcontractor to complete the work that the plaintiff originally had agreed to perform.

On May 13, 1986, the plaintiff filed this action, alleging that the named defendant had wrongfully terminated the contract before the plaintiff had the opportunity to complete performance.[3] The plaintiff sought to recover damages in the amount of $72,063 for work for which it had not been paid, $33,200 resulting from cost increases caused by a delay in the date on which the plaintiff was able to commence performance of its contract,[4] and $29,672 for lost profit, as well as interest. In its special defenses, the defendant claimed that: (1) the plaintiff had been paid in full for all the work that it had performed; and (2) the plaintiff had breached the contract. In addition, the defendant filed a counterclaim in two counts in which it alleged that: (1) the plaintiff had breached the contract by not complying with standard safety practices, by failing to staff the job properly and by not complying with contractual requirements, and that the plaintiff's breach of contract had caused the defendant to suffer damages because of downtime, additional supervision costs, and additional costs related to completion of the work and to property damage at the construction site caused by the crane accident; and (2) as a result of the plaintiff's negligence in connection with the crane accident, the

---

[3] The complaint also named as a defendant The Hartford Fire Insurance Company (The Hartford), which had furnished a labor and material bond to the named defendant. The plaintiff subsequently withdrew its action against The Hartford, which is not a party to this appeal. Hereinafter we shall refer to O and G Industries, Inc., as the defendant.

[4] During the trial, the plaintiff reduced its delay claim to $14,566 to reflect the fact that this claim was based only on the portion of the contract it actually had performed.

defendant had been forced to repair its damaged property, repair damage at the job site, reimburse the NHPA and other parties for damage and incur costs related to downtime and delay. The defendant withdrew the negligence count of its counterclaim after its negligence claim was settled at the beginning of the trial.

The jury returned a verdict in favor of the plaintiff on its principal claim and awarded damages in the amount of $105,263 as well as interest in the amount of $40,566.24. The jury awarded the defendant damages of $6500 on its counterclaim. After the trial court denied its motions to set aside the verdict, the defendant appealed to the Appellate Court. We transferred the matter to this court pursuant to Practice Book § 4023.

In its appeal, the defendant claims that the trial court improperly: (1) admitted a series of documents under the business records exception to the hearsay rule; (2) admitted the contract between the parties although the plans and specifications, which allegedly were an integral part of that contract, were not included in the offer of admission; (3) denied its motion in limine to limit the testimony of the plaintiff's chief witness on the grounds that, at the deposition of that witness, no documentation was produced to support the calculation of the damage claims nor was the witness able to provide any support for those claims; and (4) denied the defendant's attempt to prove that the named defendant was a dissolved corporation and, therefore, according to the defendant, did not have standing to sue. The plaintiff, on the other hand, contends that the trial court improperly denied its motion in limine to preclude the defendant from introducing any evidence concerning the damages caused by the accident involving the plain-

tiff's crane.[5] Because we hold that the trial court improperly admitted a document under the business records exception in § 52-180, and the defendant was prejudiced by the admission of that document, we conclude that a new trial is necessary.

I

The series of documents that the defendant claims were improperly admitted as business records concerned negotiations between the defendant and the NHPA over the resolution of two separate "delay claims" arising from the renovation of Union Station. The delay claims represented amounts that the defendant sought to recover from the NHPA to compensate it for increased construction costs arising from delays in the timetable of its work for which the defendant contends that it was not responsible.

The first delay claim involved the period from May 19, 1985, to November 30, 1986. It concerned

[5] The plaintiff claimed that the defendant should not be allowed to recover for those damages via the first count of the counterclaim because those same damages were also included in the second count of the counterclaim, which had been settled at the beginning of the trial for $5000. The plaintiff argued, in the alternative, that it was at least entitled to offset the damages awarded on the counterclaim by the settlement amount.

Although that issue was included in the plaintiff's preliminary statement of issues and briefed by both parties on appeal, we decline to address it because the plaintiff did not file a cross appeal. See Practice Book § 4005; Board of Police Commissioners v. White, 171 Conn. 553, 557, 370 A.2d 1070 (1976); Wesleyan University v. Rissil Construction Associates, Inc., 1 Conn. App. 351, 355, 472 A.2d 23, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). Moreover, even if the plaintiff had filed a cross appeal, the record is not adequate for review for two reasons. First, the record does not include a copy of the settlement agreement. In addition, because the first count of the counterclaim sought recovery for damages not included in the second count, and because we have no means for determining what portion, if any, of the damages awarded on the first count was attributable to amounts for which the defendant also sought recovery in the second count, we would not be able to determine whether any offset would be required as a result of the settlement payment. See Kilduff v. Adams, 219 Conn. 314, 334–35, 593 A.2d 478 (1991).

work that was done on platform D and the main building. The plaintiff performed work on platform D during this period and, therefore, the defendant's first delay claim included amounts related to delay costs incurred by the plaintiff. Greiner Engineering Sciences (Greiner) served as construction manager on the Union Station renovation for the NHPA during the period involved in the first delay claim. Greiner's duties included inspecting the renovation work to verify that it conformed to the contract requirements and reviewing requisitions submitted by the named defendant. In addition, at the request of the NHPA, Greiner assisted the NHPA in evaluating the first delay claim submitted by the defendant.

The second delay claim involved delay costs related to the completion of work remaining on April 3, 1987. As of that date, the plaintiff had ceased all work on the site, and therefore the defendant's second delay claim did not involve work actually performed by the plaintiff. Hill International, Inc., served as construction manager for the NHPA for the period relevant to the second delay claim and therefore assisted the NHPA in negotiating the settlement of that claim of the defendant.

Before examining each of the documents that the defendant alleges were improperly admitted, it is necessary to review the general principles that govern the admissibility of business records. To admit evidence under the business record exception to the hearsay rule, "a trial court judge must find that the record satisfies each of the three conditions set forth in General Statutes § 52-180. The court must determine, before concluding that it is admissible, that the record was made in the regular course of business, that it was the regular course of such business to make such a record, and that it was made at the time of the act described in the

report, or within a reasonable time thereafter. See generally *Hutchinson* v. *Plante,* 175 Conn. 1, 4, 392 A.2d 488 (1978); *Szela* v. *Johnson Motor Lines, Inc.,* 145 Conn. 714, 723, 146 A.2d 910 (1958). Once these criteria have been met by the party seeking to introduce the record, however, it does not necessarily follow that the record itself is generally admissible, nor does it mean that everything in it is required to be admitted into evidence. *Hutchinson* v. *Plante,* supra; *Mucci* v. *LeMonte,* 157 Conn. 566, 569, 254 A.2d 879 (1969); *Maggi* v. *Mendillo,* 147 Conn. 663, 667, 165 A.2d 603 (1960). For example, the information contained in the record must be relevant to the issues being tried. See *Maggi* v. *Mendillo,* supra. In addition, the information contained in the report must be based on the 'entrant's own observation or on information of others whose business duty it was to transmit it to the entrant.' *Mucci* v. *LeMonte,* supra. If the information does not have such a basis, it adds another level of hearsay to the report which necessitates a separate exception to the hearsay rule in order to justify its admission. *Hutchinson* v. *Plante,* supra, 5." *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 383–85, 461 A.2d 422 (1983); *Bell Food Services, Inc.* v. *Sherbacow,* 217 Conn. 476, 485–86, 586 A.2d 1157 (1991).

The witness whose testimony provides the foundation for the admission of a business record must testify to the three statutory requirements, but it is not necessary that the record sought to be admitted was made by that witness or even that the witness have been employed by the business at the time the record was made. *State* v. *Damon,* 214 Conn. 146, 157, 570 A.2d 700, cert. denied, U.S. , 111 S. Ct. 65, 112 L. Ed. 2d 40 (1990); *Baumert-Moran Sales Co.* v. *Red Bird Truck Rental Corporation,* 149 Conn. 42, 45, 175 A.2d 189 (1961). Section 52-180 does not require that a busi-

ness record be prepared by an organization itself in order to be admissible as a business record of that organization. *State* v. *Wilson-Bey,* 21 Conn. App. 162, 168–69, 572 A.2d 372, cert. denied, 215 Conn. 806, 576 A.2d 537 (1990); *Crest Plumbing & Heating Co.* v. *DiLoreto,* 12 Conn. App. 468, 475, 531 A.2d 177 (1987). If, however, the organization does not prepare the document itself, then the entrant must have a duty to that organization to prepare the record in order for it to be admissible under § 52-180. See *State* v. *Sharpe,* 195 Conn. 651, 663, 491 A.2d 345 (1985); *Mucci* v. *LeMonte,* supra.

Section 52-180 should be liberally construed. *Jefferson Garden Associates* v. *Greene,* 202 Conn. 128, 141, 520 A.2d 173 (1987); *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* supra, 390. Appellate review of the admission of a document under § 52-180 is limited to determining whether the trial court abused its discretion. *Jefferson Garden Associates* v. *Greene,* supra.

### Exhibit OO

Exhibit OO is a critical analysis of the defendant's first delay claim. This document was prepared by Greiner, NHPA's construction manager at the time, at the request of the NHPA in order to assist it in negotiating the settlement of the defendant's claim. The exhibit includes an evaluation of the claims submitted by the plaintiff as well as claims submitted by numerous other subcontractors who have no connection to this case. Michael Robinson, a construction inspector who began working for the NHPA in October of 1988, testified that the exhibit was a copy of the original, which was kept in the NHPA's files, and that the document was prepared in the ordinary course of business of the NHPA.[6] Robinson did not testify as to

---

[6] The defendant objected to Robinson testifying that the document was made in the ordinary course of business on the ground that Robinson was

whether it was in the regular course of the NHPA's business to make such a record or whether the record was made at or within a reasonable time of the act described in the exhibit.

The plaintiff sought to introduce Greiner's report into evidence in order to show Greiner's analysis of its delay claim[7] and for use during the testimony of the director of the NHPA and of Albert Landino, an employee of Greiner. The defendant objected to the admission of this exhibit on the grounds that: (1) there was insufficient testimony to support the conclusion that the three requirements of § 52-180 were satisfied; (2) the bulk of the information in the exhibit was irrelevant to this case; (3) the exhibit included several prejudicial references to the defendant; and (4) the exhibit contained opinion and analysis not subject to cross-examination and therefore it was not properly admissible under the business records exception.

With respect to the defendant's first ground for objection, we note that there was no testimony as to

not employed by the NHPA in February, 1987, when exhibit OO was prepared. After the trial judge sustained this objection, he ordered a recess to give the defendant an opportunity to review the document. After the recess, the trial judge implicitly reversed its prior ruling since it admitted the exhibit on the basis of Robinson's testimony that the exhibit was made in the ordinary course of business. We note that this result is consistent with the fact that the witness, whose testimony is used as the basis for admitting a business record, need not have been employed by the business at the time that the record was made. State v. Damon, 214 Conn. 146, 157, 570 A.2d 700, cert. denied,      U.S.     , 111 S. Ct. 65, 112 L. Ed. 2d 40 (1990).

Albert Landino, an employee of Greiner who was involved in the preparation of the analysis of the first delay claim, testified that that analysis was prepared pursuant to Greiner's duties as project manager. The trial court, however, relied solely on the testimony of Robinson in admitting the exhibit.

[7] The Greiner report states that the plaintiff's claim that it was delayed in starting "is justified," but it assigned a value of $7500 to the delay claim, which was significantly less than the $33,200 of delay damages claimed by the plaintiff.

whether it was the regular course of business to make such a record or whether the record was made at or near the time of the act described in the report. A brief examination of the document indicates that the latter requirement was satisfied by notations in the document itself,[8] but we find nothing in the testimony of Robinson to indicate that it was in the regular course of business of the NHPA to prepare such a record. Although § 52-180 is to be liberally construed, we cannot allow any of the three statutory requirements for the admission of business records to be ignored completely. *McCahill* v. *Town & Country Associates, Ltd.*, 185 Conn. 37, 40, 440 A.2d 801 (1981); *Weller* v. *Fish Transport Co.*, 123 Conn. 49, 60, 192 A. 317 (1937); cf. *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.*, supra, 388–89 (inability of witness to testify to the exact time a record was made did not render the record inadmissible because the witness stated that the report was completed at or near the time of the incident). We, therefore, conclude that the trial court improperly admitted exhibit OO as a business record. Because that report includes a statement that the plaintiff's delay claim "is justified," we cannot conclude that its admission constituted harmless error and therefore a new trial is necessary.

It is possible that on retrial the plaintiff may be able to provide sufficient testimony to demonstrate that exhibit OO satisfies the requirements set forth in § 52-180. We shall therefore address the other issues raised by the defendant concerning this exhibit because they are likely to arise again during the retrial.

We agree with the defendant's contention that the bulk of the information in the exhibit, which is over 160

---

[8] We note, however, that the record does not indicate that the trial court conducted an examination of the exhibit prior to admitting it.

pages, is irrelevant to the plaintiff's claim and was likely to have confused the jury.[9] If on a retrial the trial court concludes that the exhibit is admissible under § 52-180, the court should admit only the portions of that report that summarize its purpose, namely, the cover letters and the introduction, and any pages that include references to the portion of the delay claim related to the work performed by the plaintiff. The analysis and documentation concerning work wholly unrelated to this case should not be admitted.

The defendant contends that it was prejudiced not only by the references in the report to the plaintiff's delay claim as being "justified," but also by statements in the report that the submission to the NHPA by the defendant of its subcontractors' claims indicates that the defendant accepted those claims. It also claimed it was prejudiced by references to the defendant's own delay claim as being overstated and unsupported by documentation. Assuming that on retrial the exhibit is qualified as a business record under § 52-180, the trial court must decide whether some or all of those references should be redacted. In making this determination, the factors to be considered by the trial court include, but are not limited to, the relevance of the statements to the issues in this case and their effect upon the jury. *State* v. *Higgins,* 201 Conn. 462, 469, 518 A.2d 631 (1986); *State* v. *Periere,* 186 Conn. 599, 608–609, 442 A.2d 1345 (1982).

The defendant also claims that the type of analysis contained in exhibit OO is equivalent to expert testimony and therefore the exhibit is not the type of record eligible for admission under § 52-180. Moreover, the defendant contends that, as a result of the admission of the exhibit, it was deprived of an opportunity

---

[9] Our examination of the exhibit indicates that reference is made to the plaintiff on only five pages of the document.

to challenge through cross-examination the expert opinion included within that document. The defendant's argument mischaracterizes the nature of the business records exception. The type of analysis contained in exhibit OO lies somewhere on the continuum between fact and opinion. Even if it can be in part characterized as an opinion, that characterization does not automatically render it inadmissible under § 52-180. An opinion included within an otherwise admissible business record is admissible if the entrant would be qualified to give that opinion in oral testimony. *Mucci* v. *LeMonte,* supra, 569–70; *D'Amato* v. *Johnson,* 140 Conn. 54, 58, 97 A.2d 893 (1953); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 11.14.8. On remand, therefore, if the plaintiff is able to prove that exhibit OO satisfies the three requirements of § 52-180, the trial court must consider this subsidiary issue relating to the admission of opinions included within business records.[10]

---

[10] Two other issues concerning the admissibility of exhibit OO should also be addressed during the retrial. First, the court should consider to what extent exhibit OO was prepared in anticipation of litigation. See *Jefferson Garden Associates* v. *Greene,* 202 Conn. 128, 140-41, 520 A.2d 173 (1987), citing *Palmer* v. *Hoffman,* 318 U.S. 109, 111–15, 63 S. Ct. 477, 87 L. Ed. 645, reh. denied, 318 U.S. 800, 63 S. Ct. 757, 87 L. Ed. 1163 (1943); see generally annot., 61 A.L.R. Fed. 359. Although there is evidence in the record that exhibit OO was prepared with the expectation that the delay claim might be the subject of settlement negotiations, we have stated that "documents prepared for litigation are excluded, not on a per se basis, but rather upon an inquiry into whether such documents bear circumstantial indicia of lack of trustworthiness. In the exercise of appropriate discretion, courts may exclude such records where they are self-serving and a motive for falsification can be demonstrated." *Jefferson Garden Associates* v. *Greene,* supra. Although we have doubts about the trustworthiness of this exhibit, the record is insufficient to allow us to provide further guidance because the defendant never raised this particular issue at trial.

Second, the portions of exhibit OO pertaining to the claims of the plaintiff include figures that were obtained from a letter from the plaintiff's counsel that was sent to the defendant. On retrial, consideration should be given to whether the incorporation of those figures in exhibit OO added another

Because some of the questions raised by the defendant in this appeal concerning the admissibility of other documents are likely to arise on retrial, we shall consider the defendant's claims as to those documents as well. See, e.g., *Rego* v. *Connecticut Insurance Placement Facility,* 219 Conn. 339, 348, 593 A.2d 491 (1991).[11]

## Exhibit RR

Exhibit RR is a copy of a letter dated November 12, 1986, that was sent to the director of the NHPA by Greiner. The letter indicates that Greiner reviewed the delay claim submitted by the defendant dated June 17, 1986,[12] and recommended an allowable compensation of $587,870 out of the total claim of $3,091,923. The letter states that the claim is "grossly exaggerated" and "flawed on several important counts." The only reference in the letter to the plaintiff states that the claim for the plaintiff contains $123,067 in charges that were not related to the delay claim.[13] Robinson testified that the document was included in the NHPA's files and that it would have been received in the ordinary course of business. The defendant objected on the grounds that it was irrelevant and that it had not been qualified as a business record under § 52-180.

level of hearsay to the exhibit, and, if so, whether that information was admissible under another exception to the hearsay rule. See *Bonner* v. *Winter,* 175 Conn. 41, 44, 392 A.2d 436 (1978).

[11] The defendant also claimed that exhibit TT was not qualified as a business record and was not relevant. Although we do not consider it necessary to address that claim specifically, the trial court should consider the principles outlined above when ruling on the admissibility of that document.

[12] Exhibit RR relates to an earlier version of the first delay claim. The delay claim submitted by the defendant on December 10, 1986, which was summarized and analyzed in exhibit OO, replaced the claim dated June 17, 1986.

[13] Exhibit RR, like exhibit OO, notes that the delay claim for the plaintiff's work includes charges unrelated to the delay. The charges were for unpaid billings ($72,063), lost profits ($29,672) and damage to the catenary wires ($21,332).

On retrial, the trial court should reconsider whether exhibit RR satisfies the requirements of § 52-180. Robinson testified that the document would have been *received* in the ordinary course of business, not that it would have been *made* in the ordinary course of business. The presumption that a business record is reliable is based in large part on the entrant having a business duty to report. *D'Amato* v. *Johnson,* supra, 59–60; C. Tait & J. LaPlante, supra, § 11.14.5; see *State* v. *Paulette,* 158 Conn. 22, 29, 255 A.2d 855 (1969). The mere fact that the NHPA received this letter in the ordinary course of business and included the document in its files tells us nothing about the motivation of the maker of the record, and therefore would not ordinarily satisfy the requirements of § 52-180.[14] *White Industries* v. *Cessna Aircraft Co.,* 611 F. Sup. 1049, 1059 (W.D. Mo. 1985); *Orzechowski* v. *Higgins,* 146 Conn. 463, 466, 152 A.2d 510 (1959).

EXHIBITS PP AND QQ

Exhibit PP is a copy of the second delay claim submitted by the defendant. Exhibit QQ is a series of letters concerning the second delay claim that were exchanged between Hill International, Inc. (Hill), which was the construction manager for the NHPA when the second delay claim was negotiated, the defendant, the NHPA, and state and federal administrative agencies. The letters indicate that as a result of the settlement

---

[14] In light of Robinson's testimony concerning exhibit OO, it seems likely that on retrial he would be able to testify that exhibit RR was prepared in the ordinary course of business pursuant to Greiner's duties as project manager for the NHPA. We emphasize, however, that the mere receipt of documents in the ordinary course of business, in the absence of any duty owed by the entrant to the business to prepare the record, would not ordinarily establish such documents as business records.

We also note that, in light of some of the statements made in exhibit RR concerning the defendant's delay claim, the trial court should consider whether the probative value of this document is outweighed by its prejudicial effect. See *State* v. *Higgins,* 201 Conn. 462, 469, 518 A.2d 631 (1986).

of the second delay claim the contract price of the work performed by the defendant was to be increased by $2,564,293, resulting in a total adjusted contract price of $22,456,180.

As noted above, the second delay claim only involved work conducted during a period when the plaintiff had already ceased its operations at the construction site. The defendant objected to the admission of both exhibits PP and QQ on the ground that these exhibits concerned only the second delay claim, which did not involve any work done by the plaintiff, and were therefore irrelevant to the issues in this case. The plaintiff claimed, however, that the second delay claim was relevant because in its counterclaim the defendant sought to recover for its increased costs to complete the project resulting from the plaintiff's alleged breach of contract. Because the second delay claim included amounts related to the work performed by the subcontractor hired to replace the plaintiff, the plaintiff argued that these letters were relevant to the issue of whether the defendant suffered damages as a result of having to hire another subcontractor to complete the work.

Although the plaintiff may be correct that the second delay claim was relevant to the defendant's counterclaim, that claim is not at issue in this appeal.[15] Because only the plaintiff's claim will be retried, exhibits PP and QQ will not be relevant on retrial and therefore should not be admitted. We now turn to other issues raised by the defendant that are likely to arise on retrial and that merit our attention.

II

The defendant filed a motion in limine to preclude the plaintiff from offering documentary evidence to

[15] See footnote 5, supra.

explain the basis for the damage claims set forth in the complaint. The defendant specifically sought to bar the plaintiff from offering proof that it incurred a cost of $550 per pile and that it suffered lost profits in the amount of $29,672 and delay damages in the amount of $33,200. The basis for this motion was the defendant's assertion that the plaintiff had failed to comply with its notice of deposition. The plaintiff was served with the notice pursuant to Practice Book § 244 (g).[16] That notice had commanded the plaintiff to appoint a person who could explain "the basis of the legal claims and claims for money damages set out in the complaint" and to bring any documentation supporting those claims. The plaintiff appointed Simeon Beer, its general manager at the time of the Union Station renovation, to appear at the deposition.

The defendant contends that the trial court should have granted its motion because at the deposition Beer did not provide support for the computation of the plaintiff's claims for damages because either he lacked the supporting documentation or he could not remember how the particular figure had been calculated.[17] The defendant argues that it would be inequitable and contrary to the Prac-

---

[16] Practice Book § 244 (g) provides: "A party may in the notice and in his subpoena name as the deponent a public or private corporation or a partnership or an association or a governmental agency or a state officer in an action arising out of the officer's performance of employment and designate with reasonable particularity the matters on which examination is requested. The organization or state officer so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The persons so designated shall testify as to matters known or reasonably available to the organization. This paragraph does not preclude the taking of a deposition by any other procedure authorized by the Practice Book."

[17] For example, at the deposition Beer stated he could not remember how the amount of lost profits was calculated. Beer did not prepare the supporting documentation for the lost profit figure until after the trial had begun.

tice Book rules to allow the plaintiff to offer proof in support of its claims for damages when it neglected to provide the defendant with the basis for the calculation of those amounts at the deposition. In opposition, the plaintiff contends that the notice of deposition did not specify what documentation was needed. Moreover, the plaintiff notes that during the deposition its attorney offered to provide whatever documentation the defendant needed if the defendant would simply submit a specific request, but counsel for the defendant never submitted such a request nor were any interrogatories, requests for production or motions for sanctions ever filed by the defendant in relation to this issue. The plaintiff contends that the defendant had failed to follow up on the plaintiff's offer to provide the necessary documentation and attempted to use its motion in limine to ambush the plaintiff at trial.

"In the event of a party's failure to answer any or all questions at a deposition the court may make such order as the ends of justice require. Practice Book § 231." *Pavlinko* v. *Yale-New Haven Hospital,* 192 Conn. 138, 144, 470 A.2d 246 (1984). Our review of the transcript of the deposition confirms that the plaintiff offered to provide the documentation sought if the defendant followed up on its request, and the defendant does not deny that it did not take any subsequent action other than filing the motion in limine. On the basis of these facts, we conclude that the trial court did not abuse its discretion in denying the defendant's motion in limine.[18]

## III

The defendant's final claim is that the trial court improperly denied its offer to introduce into evidence

---

[18] We do not hold, however, that a party must show that it has exhausted all available procedural remedies to compel the production of information as a condition for the trial court, in the exercise of its discretion, to exclude the introduction of such information at trial.

a certificate indicating that the plaintiff is a dissolved corporation. The defendant offered this certificate as the basis for its claim that the plaintiff lacked standing to maintain this action. The plaintiff concedes that it was dissolved by forfeiture pursuant to General Statutes § 33-387 in August, 1988, subsequent to the filing of this action, but contends that it did not lose its right to maintain this suit as a result of the dissolution. We agree.

General Statutes § 33-375 sets forth five ways in which a corporation may be dissolved, one of which is dissolution by forfeiture pursuant to § 33-387. General Statutes § 33-378 (d) provides that "[n]o action or proceeding, civil or criminal, to which a corporation is a party shall abate by reason of dissolution." The defendant claims, however, that a corporation dissolved by forfeiture under § 33-387 should not be entitled to pursue a claim because, by definition, such a corporation has not complied with the provisions for winding up under General Statutes § 33-379 or with the provisions of General Statutes § 33-388 concerning reinstatement after dissolution.

This claim is without merit. Statutes are to be applied as their words direct. *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 141, 509 A.2d 1050 (1986). "[I]f the statutory language is clear and unambiguous, there is no room for construction." *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 485, 362 A.2d 785 (1975); *Kelemen* v. *Rimrock Corporation,* 207 Conn. 599, 606, 542 A.2d 720 (1988). Section 33-378 (d) clearly preserves the right of a dissolved corporation to continue an action filed before dissolution, and none of the statutory provisions cited above makes this provision contingent on the particular method by which the corporation was dissolved. We therefore reject the defendant's claim

that the plaintiff lacked standing to pursue this action. Cf. *Don Rich Corporation* v. *Rossini,* 1 Conn. App. 120, 122–23, 468 A.2d 1273 (1983) (corporation allowed under General Statutes § 33-378 (e) to maintain action brought after dissolution).

The judgment is reversed and the case is remanded to the trial court for a new trial.

In this opinion PETERS, C. J., GLASS and F. X. HENNESSY, Js., concurred.

BORDEN, J., concurring in part and dissenting in part. I concur in the majority opinion, particularly in its conclusion that the trial court improperly admitted exhibit OO into evidence. I disagree, however, with the majority's ultimate disposition of that exhibit.

My sole disagreement with the majority opinion is with its conclusion "that on retrial the plaintiff may be able to provide sufficient testimony to demonstrate that exhibit OO satisfies the requirements set forth in [General Statutes] § 52-180," the business entry statute. In my view, that exhibit is so clearly outside the confines of a true business entry that, in the interests of judicial economy, we should not waste the trial court's time and energy in ruling on its admissibility on the retrial. I reach this conclusion on the basis of two independent reasons: (1) the document does not comply with the fundamental business entry requirement "that it was made at the time of the act described in the report, or within a reasonable time thereafter"; *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 384, 461 A.2d 422 (1983); and (2) on its face, the document so manifestly demonstrates that it was prepared in anticipation of litigation that it would be an abuse of discretion for the trial court to admit it.

The exhibit in question consists of ninety pages of analysis of the defendant's delay claim, plus approximately seventy pages of the component parts of the delay claim that the exhibit purports to analyze. The exhibit is dated February 5, 1987, and purports to submit the delay claim to four "Analysis Levels," which in turn purport to provide a "Correction of Claim For Flaws" and "Adjustment of Claim For Overstated Charges."

In the language of the cover letter and introduction to the exhibit: "Analysis Level No. 1 simply removes flaws from the claim. These flaws consist of duplication of charges, items that do not warrant inclusion in the claim, and incorrectly computed charges. It is emphasized that this Analysis Level does not go to the merit of any portion of the claim. These corrections amount to more than $2,000,000.00. *If settlement negotiations occur in the future, the beginning point of such negotiations should commence at a claim value of $3,360,230.00, rather than the amount submitted by O & G Industries.*

"Analysis Level No. 2 takes the position that O & G Industries is responsible for 6 months of the 18.5 month late delivery of the project. *As such, the assessed value of Analysis Level No. 1 is reduced by applying a factor equal to 12.5/18.5.*

"Analysis Level No. 3 reviews the merit of each component of the claim and adjusts it accordingly.

"Analysis Level No. 4 *reduces the assessed value of Analysis Level No. 3 by applying a factor equal to 12.5/18.5.*" (Emphasis added.)

The report continues in the following vein: "Some [of the subcontractors' claims] are completely lacking in supporting documentation . . . . Others make outlandish claims as illustrated by the Westinghouse claim

for $23,537.00 in anticipation of repairs to the escalator, which no one knows at this time will ever be required." In the portion of the report entitled "Method of Analysis," it states: "This analysis of the claim without benefit of an 'as built' CPM,[1] complies with your request for comments on the basis of a thorough review of the material submitted by O & G. *The intent being that the comments emerging from such a review, may suffice as a basis to conclude a mutually acceptable settlement with O & G regarding the delay claim, thereby precluding the need to undertake a costly and time consuming 'as built' CPM.*" (Emphasis added.) The foregoing are just some of the indications of the nature of the document at issue.

When the plaintiff offered the document into evidence, the defendant objected on the basis, inter alia, that "[i]t isn't a business entry in the sense that even if someone would vow that it was kept in the regular course of business, *it is not a recordation of facts.*" (Emphasis added.) The plaintiff responded, inter alia, that it was *"offering it to show the analysis of the delay claim . . . ."* (Emphasis added.)

In order for a document to be admissible as a business entry, it must have been "made at the time of the act described in the report, or a reasonable time thereafter." *Emhart Industries, Inc.* v. *Amalgamated Local Union 376, U.A.W.,* supra. The "act" referred to is not the claim of a party, which in this case was submitted some time in 1986, but the conduct or events that give rise to that claim. The "act described in the report" is what happens in the field, so to speak, that may have been recorded by someone in the regular course of business. It is the contemporaneous nature of the record-

---

[1] A CPM is, apparently, a "critical path method" that compares the schedule of how the project was actually built to the original schedule in the contract documents.

ing, together with its regularity, that gives a business entry its indicia of reliability and thus its admissibility. See *Hutchinson* v. *Plante*, 175 Conn. 1, 4, 392 A.2d 488 (1978). This document describes, not the conduct of any person or party, or any events that may have occurred in the course of the project, but the written claim of the defendant arising out of that conduct or events.

In this case, that conduct and those events occurred between August 25, 1983, when the defendant entered into its subcontract with the plaintiff, and April 15, 1985, when the defendant ceased work. Exhibit OO is dated February, 1987, nearly two years later. It simply *is not* a substantially contemporaneous recording of any acts or events. It *is* simply an analysis of the written claim of the defendant arising out of those events made two to four years after they occurred.

Furthermore, it is manifestly clear to me that the document was prepared for purposes of litigation. That is clear from its stated intent of offering an analysis of the defendant's claim for purposes of settlement, and its stated values for the starting point of settlement negotiations. Delay claims are as indigenous to the construction industry as malpractice claims are to the medical profession, or product liability claims are to the consumer products industry. In my view, this document is no more a business entry than an analysis, by an insurer's claims adjuster or by an expert hired by the insurer, of a medical malpractice or product liability claim submitted by a potential claimant. Although a trial court has discretion to decide whether a document has been prepared for litigation purposes, this document is so clearly inadmissible under that exclusion to the business entry exception to the hearsay rule that I would save the trial court's time by stating so now.

I therefore concur in part and dissent in part.