[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION[1]
On January 26, 1986, defendant, Kalman A. Sachs ("Sachs") signed a demand note ("Note") in the amount of $150,000 to evidence a loan from the Connecticut Savings Bank ("CSB"). On August 8, 1991, the plaintiff filed a writ, summons, and complaint against the defendant for failure to pay the Note. On the same day, the plaintiff filed a Writ, Summons and Direction for Garnishment and Attachment pursuant to General Statutes 52-278f against the defendant. On September 10, 1991, the defendant filed a motion to dissolve the prejudgment remedy ("PJR").
In November, 1991 CSB was declared insolvent and the superior CT Page 390 court appointed the Federal Deposit Insurance Corporation ("FDIC") as the receiver of CSB. As a result of a purchase and assumption agreement between the FDIC and Centerbank, Centerbank became the owner and holder of the note which is the subject of this case.
On January 19, 1993, the court denied the defendant's motion to dissolve. On February 8, 1993, the defendant appealed the trial court's decision and filed a motion for articulation dated February 5, 1993. In May, 1993, the court dissolved the ex parte PJR filed by the plaintiff, and on May 18, 1993 the plaintiff filed an application for a second PJR. On May 28, 1993, the plaintiff appealed the trial court's dissolution of the initial PJR. A hearing in connection with the application for the additional PJR was held on June 21, 1993. At the request of the court, the plaintiff filed memoranda in support of the PJR on June 21 and 7, 1993. The defendant filed memoranda in opposition to the PJR on June 18 and July 6, 1993.
1. Business Records
At a hearing on the Motion to Dissolve the prejudgment remedy the plaintiff sought to introduce a computer print-out as a business record to establish evidence of the defendant's indebtedness. The defendant objected to the introduction.
The business records exception to the hearsay rule is codified General Statutes 52-180, which provides in part:
 (a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.
"The trial court is given the discretion under the statute to CT Page 391 determine whether the criteria of the statute have been satisfied. In reviewing the decision of the trial court, we must construe the statute liberally." LaFaive v. DiLoreto, 2 Conn. App. 58, 64,476 A.2d 626 (1984). "To gain admission of a document under the business record exception to the hearsay rule, the proponent must show that (1) the document was made in the regular course of business, (2) it was the regular course of business to make such a record, and (3) the record was made when the act, transaction or event occurred, or shortly thereafter." State v. Damon, 214 Conn. 146,156-57, 570 A.2d 700, cert. denied, 111 S.Ct. 65,112 L.Ed.2d 40 (1990).
"The essential hallmark of admissibility under 52-180 is the trustworthiness of the document. . . ." Id., 157. The witness must testify to the three requirements, but "the witness need not have been the entrant himself or even in the employ of the business when the entry was made." Id.; River Dock Pile, Inc. v. O G Industries, Inc., 219 Conn. 787, 794, 595 A.2d 839 (1991) (records of delay claims, offered through a witness who was not an employee of the business when the record was made, excluded because there was no testimony as to whether it was in the regular course of business to make such a record.) "The lack of personal knowledge of the entrant as to the particular source of the information affects the weight of the evidence, not its admissibility." Shuchman v. State Employees Retirement Commission, 1 Conn. App. 454,459, 472 A.2d 1290 (1984); General Statutes 52-180 (b).
"Section 52-180 does not require that a business record be prepared by an organization itself in order to be admissible as a business record of that organization." River Dock Pile, Inc. v. O G Industries, Inc., supra, 794-95. "If, however, the organization does not prepare the document itself, then the entrant must have a duty to that organization to prepare the record in order for it to be admissible under 52-180." Id. 795 "[T]he statute recognizes that the trustworthiness of such documents comes from their being used for business and not for litigation." State v. Lawler, 30 Conn. App. 827, 622 A.2d 1040 (1993) (court admitted a credit memorandum prepared by a lending officer of a bank even though the witness lacked personal knowledge of the record.)
In In re Kelly S., 29 Conn. App. 600, 616 A.2d 1161 (1992), the court allowed records of one hospital to be admitted through a witness who was an employee of a second hospital which received the record pursuant to a written authorization. The court reasoned that "it is the duty to report in a business context that provides CT Page 392 the reliability to justify this hearsay exception." Id., 610. In the present case, the records were made by Connecticut Savings Bank and were assigned to Centerbank by the FDIC. As long as the original entrant had a duty to Centerbank to make those records, the need for reliability is satisfied. River Dock Pile, Inc., supra 795; In re Kelly S., supra, 610.
In American Oil Co. v. Valenti, 179 Conn. 349, 426 A.2d 305
(1979), the court admitted computer print-out summaries of the plaintiff's accounts with its customers, even though the witness did not prepare the underlying statements or use a computer. The court held that "[b]ecause computer records are part of ordinary business activities, created for business rather than for litigation purposes, they carry with them the assurance regularity that is a large element in establishing their trustworthiness." Id., 357. In the present case the witness for the plaintiff testified that Centerbank's records included a computer print-out taken from Connecticut Savings Bank's computer system.
Upon the foregoing authorities and for the foregoing reasons, this court admits into evidence the computer print-out offered Centerbank.
2. The D'Oench, Duhme Doctrine
The Supreme Court held in D'Oench, Duhme Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447, 62 S.Ct. 676,86 L.Ed. 956 (1942), that a borrower holding a loan that has assumed by the FDIC is estopped from raising defenses against the FDIC based upon "side agreements" designed to deceive creditors or the public authority or tending to have that effect. The purpose of the holding in D'Oench, Duhme "is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." Langley v. FDIC, 484 U.S. 86, 91,108 S.Ct. 396, 98 L.Ed.2d 340 (1987). "The doctrine's applicability depends upon whether or not the alleged agreement was `designed deceive the creditors or the public authority or would have that effect.' If borrowers lend themselves in any way to a scheme or arrangement whereby the banking authority is or is likely to be mislead, the D'Oench, Duhme doctrine will prevent the enforcement of the agreement." (Citations omitted.) Resolution Trust Corporation v. Oaks Apartments Joint Venture, 966 F.2d 995, 998-99
(5th Cir. 1992). CT Page 393
The D'Oench Duhme doctrine was codified in 12 U.S.C. § 1823 (e) which provides that:
 no agreement tending to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) is in writing, (2) was executed by the depository institution and . . . the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.
"Both D'Oench and 1823(e) have been applied numerous times to effectuate the public policy interest in not enforcing `secret agreements' against the FDIC when it is carrying out its statutorily-mandated duties to protect depositors." Howell v. Continental Credit Corp., 655 F.2d 743, 746 (1981).
The plaintiff argues that the determination of base rate was an unwritten "agreement" under 12 U.S.C. § 1823. The plaintiff further argues that D'Oench, Duhme prevents that "agreement" from being asserted against Centerbank because it was not in writing and it diminished Centerbank's interest in the note. The cases that plaintiff cites, however, discuss defenses asserted by the borrowers that are not based on the written note itself; Langley v. Federal Deposit Insurance Corporation, 484 U.S. 86, 108 S.Ct. 396,98 L.Ed.2d 340 (1987) (oral misrepresentation as to the value of collateral securing a loan); Bell Murphy and Associates, Inc. v. Interfirst Bank Gateway, 894 F.2d 750 (5th Cir. 1990) (unrecorded letter to effect agreement that borrower would surrender its accounts receivables and pension and profit sharing plans to the bank, and the bank would extend open corporate loans and honor CT Page 394 checking account overdrafts); Firstsouth F.A. v. Aqua Construction, Inc., 858 F.2d 441 (8th Cir. 1988) (bank allegedly orally agreed to place loan proceeds in passbook account and not to release loan proceeds without the consent of the guarantor); Beighley v. Federal Deposit Insurance Corporation, 868 F.2d 776 (5th Cir. 1989) (unwritten side agreement calling for bank to finance a third party purchase of the property securing loan in default.
The defendant argues that D'Oench. Duhme and 12 U.S.C. § 1823
do not apply to situations where the defense is based upon the actual written agreement being used by the plaintiff to enforce the loan. In Resolution Trust Corporation v. Oaks Apartments Joint Venture, 753 F. Sup. 1332 (N.D.Tex. 1990), the RTC sued to recover amounts due on a note. The Court found that D'Oench Duhme did not apply because the agreement limiting partner liability is in writing, was executed contemporaneously with the note, and was contained in the same file as the note. The defendant claimed that its liability was limited under a written guarantee. Id., 1335-36. The plaintiff argued that D'Oench, Duhme prevented the defendant from asserting the guarantee as limit to their liability. Id. 1336. The court ruled that:
 Plaintiff should be estopped from claiming that the partners cannot rely on the guaranty as a basis for recovery in this action. More importantly, this is not a case where the borrower is attempting to assert a side agreement to reduce the value of an asset of a failed thrift. Unlike D'Oench, where the borrower sought to avoid liability on the note, the validity and enforceability of the note in this action are not in question. Accordingly, the partners are not estopped pursuant to D'Oench from asserting the limitation of their individual liability on the note.
Id., 1336.
The defendant cites similar cases where D'Oench, Duhme does not bar the defendant's claims. In Riverside Park Realty v. FDIC,465 F. Sup. 305 (1978), the plaintiff claimed the breach of an agreement when the FDIC sought to foreclose on a deed of trust.
The court held: CT Page 395
 When . . ., the asset upon which the FDIC is attempting to recover is the very same agreement that the makers allege has been breached by the FDIC's assignors, 1823(e) does not apply. . . . Defendants' attempt to characterize the agreement that plaintiffs claim has been breached as a separate and unrecorded agreement is totally unpersuasive. The deed of trust under which the FDIC now seeks to foreclose incorporates by reference "as if fully set forth" the terms of the loan agreement that plaintiffs allege were breached. . . . Therefore, since plaintiffs are not asserting a separate agreement to defeat the rights of the FDIC, defendant's argument that 1823 applies must fail. (Emphasis in original).
Id., 313. In the present case, the defendant is not asserting a separate agreement, but rather contests the meaning of the language in the very same document on which plaintiff sues. Therefore, plaintiff's attempt to characterize defendant's claim as an unwritten agreement is unpersuasive. It strains credibility to allow the plaintiff to sue on the note while simultaneously claiming that D'Oench, Duhme, bars a defense based on the same note. In the present case, the note on which the plaintiff brings suit is part of the bank records on which the FDIC and assignees have relied. It follows that the policy behind the D'Oench, Duhme doctrine is not undermined by allowing an inquiry into the meaning of the term "base rate", a term essential to understanding the written agreement.
In FDIC v. Vernon Real Estate Investments, Ltd., 798 F. Sup. 1009
(S.D.N.Y. 1992), the court held that claims based upon the express provisions of the loan agreements are not barred by D'Oench, Duhme, or 1823. In Vernon, the defendant was claiming wrongful withholding of funds and improper distribution of funds under the loan agreements. Id., 1015. In the present case, the defendant is claiming that the interest rate charged is higher than was determined when the note was originally signed.
In Royal Bank of Canada v. FDIC, 733 F. Sup. 1091 (N.D.Tex. 1990), the plaintiff sued for breach of a loan contract. The court held "[t]hat proof of the breach of the agreement may require CT Page 396 resort to evidence not contained in Republic Bank's files does not bring the rule of estoppel into play. D'Oench, Duhme cannot reasonably be understood to require that evidence of the breach of an agreement be contained in a bank's file." Id., 1098.
In the present case, the note is a written document in the plaintiff's files and was a written document in CSB's files. Plaintiff's characterization of defendant's definition of "base rate" as an "agreement" which is barred under 12 U.S.C. § 1823 is misplaced. The cases that plaintiff cites involve side agreements not embodied in the loan agreement itself. These agreements are what D'Oench, Duhme is designed to keep out. D'Oench, Duhme, Co. v. FDIC, supra. Since the loan agreement which the plaintiff seeks to enforce is the same agreement on which the defendant is basing its defense, and is not a side "secret" agreement, this Court finds D'Oench, Duhme and 12 U.S.C. § 1823 do not prohibit the introduction and consideration of evidence as to the definition of the term "base rate."
It is worthy to note that Ms. Annette Petruzzi, Operations Supervisor for Centerbank, testified in part that she does not know what the term "base rate," means as that term is used by former Connecticut Savings Bank in the subject note. Furthermore, defendant Kalman Sachs testified that the Connecticut Savings Bank improperly changed the meaning and application of the term.
CONCLUSION
Having heard the parties, the Court finds that there is probable cause for the issuance of a prejudgment remedy in the total amount of $125,000.00.
Clarance J. Jones, Judge