## STATE OF CONNECTICUT *v.* EDWARD J. KILROY
## (AC 17722)

Landau, Mihalakos and Pellegrino, Js.

Argued May 1—officially released December 26, 2000

*Joseph F. Keefe*, with whom were *James Zeller* and, on the brief, *Edward J. Peters*, *Jr.*, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom, on the brief, were *John T. Redway*, state's attorney, and *John Cashmon*, assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Edward J. Kilroy, appeals from the judgment of conviction, rendered after a jury trial, of two counts of assault in the second degree

with a motor vehicle in violation of General Statutes § 53a-60d (a).[1] The defendant claims that the trial court improperly (1) admitted the records of Middlesex Hospital concerning his blood alcohol level, (2) admitted the testimony of Richard Dennis Pinder, a physician, concerning the blood alcohol tests performed at Middlesex Hospital, (3) instructed the jury that it could not draw an adverse inference from the failure of the police to produce photographs that were taken of the defendant's vehicle and (4) failed to allow into evidence a redacted police report. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 20, 1994, at approximately 2 a.m., a Nissan Pathfinder driven by James Timbro was proceeding southbound on Saybrook Road. Timbro had consumed three beers over the previous six hours. Timbro saw the headlights of the defendant's pickup truck rapidly approaching in his own lane. In an attempt to avoid a head-on collision with the oncoming vehicle, Timbro swerved into the northbound lane. The defendant, however, turned in the same direction and the two vehicles collided.

Officer Glen Morron of the Middletown police department, also traveling southbound on Saybrook Road, arrived on the scene soon after the collision. Upon exiting his vehicle, Morron found Timbro, screaming in pain, lying on the ground just outside the open driver side door of his vehicle. Seeing that Timbro was in need of immediate medical attention, Morron reported the accident and requested medical assistance. Morron then approached the defendant's pickup truck. In the

---

[1] General Statutes § 53a-60d (a) provides in relevant part: "A person is guilty of assault in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor . . . he causes serious physical injury to another person as a consequence of the effect of such liquor . . . ."

cab of the defendant's pickup truck Morron saw a man, later identified as Gregg McQueeney, slumped over in the passenger seat, his head resting against the passenger side window. McQueeney was bleeding from the head and appeared to be unconscious.

Walking around the truck to the passenger side door, Morron saw the defendant standing on the shoulder of the road, bleeding from the head. Morron assisted the defendant in sitting down on the ground. When asked what had happened, the defendant replied that he had been driving his truck in the proper lane when a car suddenly appeared on the wrong side of the road coming directly at him. The defendant, whose speech was slurred and who smelled of alcohol, told Morron that he had been drinking all night. Because the defendant was injured and in need of medical attention, Morron did not perform any field sobriety tests on him.

Paramedics, additional police and fire personnel arrived, and rescue efforts were coordinated by Lieutenant Wayne Bartoletta of the Middletown south fire district. Bartoletta found Timbro in serious medical distress and called for a rescue helicopter. Bartoletta then approached the defendant. Despite not having been asked, the defendant told Bartoletta that he had not been driving his own pickup truck. Bartoletta smelled beer on the defendant's breath. Having ascertained that the defendant had no life threatening injuries, Bartoletta attended to McQueeney, who had regained consciousness in the cab of the pickup truck. Bartoletta ordered firefighter Glen Harvey to cut open the pickup truck's passenger side door and to extricate McQueeney. All three accident victims were taken to Middlesex Hospital.

As soon as he was sure that Timbro, McQueeney and the defendant were receiving appropriate medical assistance, Morron began to investigate the accident

scene. As part of the investigation, Morron asked Sergeant Louis Tosto of the Middletown police department to take photographs of both the Nissan Pathfinder and the pickup truck. After he had taken between twelve and twenty-four photographs, Tosto gave the undeveloped film to Morron. The film, however, was lost at some point, either before or after it had been developed. Despite an extensive search, neither the film nor the developed photographs were ever found. No one could determine with any degree of certainty whether the film had ever been developed.

On the night of the accident, the blood sample of all three accident victims were drawn at Middlesex Hospital and tested for alcohol content. The defendant's blood was drawn and tested twice. At 4:03 a.m., the defendant's blood alcohol level content (BAC) was 0.24 percent and, at 5:48 a.m., his BAC was 0.208 percent.

The defendant was charged with two counts of assault in the second degree with a motor vehicle in violation of § 53a-60d. At trial, the defendant pleaded not guilty and testified that he was not the driver of the pickup truck, but instead that he had been sleeping in the back bed of the pickup truck and did not know who had been driving at the time of the accident.

At trial, Pinder, a physician and an expert witness for the state, testified as to the defendant's BAC and the number of drinks that he would have had to ingest to create that BAC. On August 7, 1997, the jury returned a verdict of guilty of two counts of assault in the second degree with a motor vehicle. This appeal followed.

I

The defendant first claims that the court improperly allowed into evidence the test results of his BAC as part of his Middlesex Hospital records because the state

failed to lay a proper foundation for the admission of those records. We disagree.

General Statutes § 52-180 sets forth two requirements for the admissibility of a business record at trial as an exception to the hearsay rule. Section 52-180 (a) provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter." "Section 52-180 should be liberally construed . . . . Appellate review of the admission of a document under § 52-180 is limited to determining whether the trial court abused its discretion." (Citations omitted.) *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 795, 595 A.2d 839 (1991).

The court properly admitted the defendant's Middlesex Hospital records because the records met the requirements for a business record as an exception to the hearsay rule under § 52-180. At trial, William Gordon Van Nes, the defendant's treating physician at Middlesex Hospital on the night of the accident, provided the foundation for the admission of the hospital records. Van Nes testified concerning the hospital's procedures surrounding the taking, labeling and testing of blood samples. His testimony clearly demonstrated that in the regular course of business, Middlesex Hospital takes, tests and labels blood samples from patients. Van Nes further testified that it is the hospital's regular course of business to record those test results in the patient's hospital record within a reasonable time after the taking, labeling and testing of the patient's blood.

General Statutes § 52-180 (b) provides in relevant part that a "writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. . . ." Our Supreme Court clarified this concept in *River Dock & Pile, Inc.*, when it held that it is not necessary that the witness whose testimony provides the foundation for a business record be the author of that record. *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, supra, 219 Conn. 794.

Therefore, the defendant's claim that the state failed to lay a proper foundation for the admission of his hospital records because the state failed to produce as witnesses the person or persons who actually drew, labeled and tested the blood, and recorded the test results in the defendant's hospital records is without merit. Pursuant to § 52-180 (b) and *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, supra, 219 Conn. 794, such a failure is not a bar to the admission of the evidence as a business record.

II

The defendant's second claim is that the court should not have allowed expert testimony concerning the blood alcohol tests performed on him at the hospital because the hospital records on which that testimony was based were improperly admitted into evidence. We do not address this claim.

Because this second claim is predicated on the inadmissibility of the defendant's hospital records and because those records, as discussed previously, were properly admitted into evidence, the claim must fail.

## III

The defendant's third claim is that the court improperly charged the jury that it was not to draw any negative inference because of the failure of the police to produce the accident scene photographs at trial. Specifically, the defendant claims that the court improperly required him to show bad faith on the part of the police before it would charge the jury that a negative inference could be drawn from the absence of the photographs. We disagree.

The following additional facts are necessary to the resolution of this claim. On the night of the accident, Tosto took between twelve and twenty-four photographs of the pickup truck and the Nissan Pathfinder at the scene of the accident. Those photographs were neither produced at trial nor made available to the defense because the police were unable to find them or to ascertain whether the film had ever been developed.

Prior to closing argument to the jury, defense counsel filed with the court a request to charge the jury that the "fact that [the] photographs were not produced into evidence may be considered by you in weighing all of the testimony of the police officer who last had [the] film in his possession." The court declined that request, and the defendant took exception to that ruling. During closing argument to the jury, however, defense counsel invited the jury to draw a negative inference against the state because the photographs had not been produced. In its charge to the jury, the trial court instructed the jurors that "[b]ecause the photographs have not been introduced into evidence, you may not consider the contents of the photos. You are not to speculate or surmise as to what the photographs may have depicted. You are not to draw any negative inference based upon the failure of the state to produce the photographs." The defendant objected on the ground that "the jury

should be allowed to take any inference it wishes from the fact that those photographs were not produced in evidence . . . ." The court responded that it did not have any intention to instruct the jury not to draw an adverse inference until defense counsel urged the jurors during closing argument to draw such an inference. The court stated that there was no logical basis for the drawing of a negative inference because it was not known what the photographs depicted and because there had been no showing of bad faith. The defendant interprets the court's statement to mean that a bad faith test was imposed with regard to the missing photographs and claims on appeal that that was the wrong standard to apply in determining whether his due process rights were violated. The defendant, however, did not raise a due process claim at trial, and we will therefore subject that claim, raised for the first time on appeal, to the standard set forth in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40.

"In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." Id., 240. "Although the first two prongs of *Golding* consider whether the defendant's claim is reviewable, the last two prongs go to

the merits of the claim." *State* v. *Brown*, 56 Conn. App. 26, 31, 741 A.2d 321 (1999), cert. denied, 252 Conn. 927, 746 A.2d 790 (2000). We conclude that the defendant's claim fails to satisfy the third prong of *Golding* because he is not able to establish a clear constitutional violation that clearly deprived him of a fair trial.

In *State* v. *Morales*, 232 Conn. 707, 727, 657 A.2d 585 (1995), our Supreme Court held that in determining whether the state's failure to preserve evidence has resulted in a violation of a defendant's due process right under article first, § 8, a "trial court must employ the [*State* v. *Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985)] balancing test, weighing the reasons for the unavailability of the evidence against the degree of prejudice to the accused. More specifically, the trial court must balance the totality of the circumstances surrounding the missing evidence, including the following factors: 'the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence.' [Id., 724]." *State* v. *Morales*, supra, 727.

In denying the defendant's request to charge, the court ruled that there had been no showing that the police had acted in bad faith in not producing the photographs. That court also determined that the jurors would have had to resort to speculation as to what the photographs would have shown. In considering possible prejudice to the defendant, the court could not declare that the photographs would have been exculpatory. It also ruled that because the defendant had had access to the truck when it was located at a garage after the accident, and because defense witnesses in fact had examined the truck and testified about its condition, the loss of the photographs was harmless

when the state's failure to disclose them was balanced against any prejudice to the defendant. In light of the record here, the defendant cannot prevail on his claim that the trial court relied exclusively on the defendant's failure to establish bad faith on the part of the police in reaching its decision. That court also ruled that any determination of materiality would have been speculative and that the defendant was not prejudiced. Under the circumstances here, there was no clear constitutional violation that clearly deprived the defendant of a fair trial.

## IV

The defendant's final claim is that the court's failure to allow into evidence a redacted police report materially prejudiced his ability to defend himself against the charges. We disagree.

"A trial court has broad discretion in ruling on the admissibility of evidence, and such discretion will not be disturbed on appeal except on a showing of a clear abuse of discretion." *State* v. *Jones*, 44 Conn. App. 476, 487, 691 A.2d 14, cert. denied, 241 Conn. 901, 693 A.2d 304 (1997). The defendant has failed to show that the court abused its discretion in refusing to admit the redacted police report. It is clear from the record that the defendant was afforded several opportunities to put his evidence before the jury. Morron testified and was cross-examined during the trial. The defendant refused to ask for a capias from the court to compel Morron's reappearance, and he refused a continuance to attempt to obtain Morron's testimony.

The judgment is affirmed.

In this opinion the other judges concurred.